United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SPENCER WONG, et al.,
Plaintiffs,
v.
ARLO TECHNOLOGIES, INC., et al.,
Defendants.

Case No. 19-cv-00372-BLF

**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S AMENDED COMPLAINT**

[Re: ECF 85]

Before the Court is a motion by Defendants Arlo Technologies, Inc. ("Arlo"), Matthew McRae, Christine M. Gorjanc, Patrick C.S. Lo, Andrew W. Kim, Netgear, Inc. ("Netgear"), Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., Guggenheim Securities, LLC, Raymond James & Associates, Inc., Cowen and Company, LLC, and Imperial Capital, LLC. (collectively, "Defendants") to dismiss Lead Plaintiff Matis Nayman's Amended Complaint. *See generally* Mot. to Dismiss ("Mot."), ECF 85. The Court held a hearing on the motion on December 5, 2019. For the reasons stated on the record at the hearing and as set forth below, Defendants' motion to dismiss is GRANTED WITH LEAVE TO AMEND.

## I. BACKGROUND

### A. Factual Background[1]

Arlo is a consumer electronics company that specializes in "smart home" security devices, such as cameras, doorbells, and lights. Am. Compl. ("Compl.") ¶¶ 2, 43-46, ECF 55. Prior to 2018, Arlo was a wholly-owned subsidiary of Netgear. Compl. ¶ 4.

On July 31, 2018, Arlo filed its Registration Statement with the Securities and Exchange

[1] Plaintiffs' well-pled factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

Commission ("SEC"), and its Registration Statement was declared effective on August 2, 2018. Compl. ¶ 53; *see* Decl. of Peter M. Adams ("Adams Decl."), Ex. A ("Reg. Statement"), ECF 87-1. On August 6, 2018, Arlo filed its prospectus, which forms part of the Registration Statement, with the SEC. Compl. ¶ 54.

In August 2018, Arlo conducted an initial public offering ("IPO") of its common stock. Compl. ¶ 54. Six financial institutions acted as underwriters for the IPO: Merrill Lynch, Pierce, Fenner & Smith, Inc., Deutsche Bank Securities, Inc., Guggenheim Securities, LLC, Raymond James & Associates, Inc., Cowen and Company, LLC, and Imperial Capital, LLC (collectively, the "Underwriter Defendants."). Compl. ¶ 38. Arlo sold more than 11 million shares of common stock for $16.00 per share in its IPO. Compl. ¶ 54.

On October 25, 2018, Arlo announced its earnings for the third quarter of 2018. Compl. ¶ 11. During an earnings call that day, Arlo's Chief Financial Officer, Defendant Christine M. Gorjanc, provided materially reduced guidance for the fourth quarter of 2018, which included reduced gross margins. Compl. ¶ 11; *see* Adams Decl., Ex. B ("Earnings Call"), ECF 87-2. The size of Arlo's gross margins was important to Arlo and the market: in fiscal year 2017, Arlo achieved gross margins of 25%, and in fiscal year 2016 it achieved gross margins of 21%. Compl. ¶¶ 5, 48. To continue this upward trend, Arlo sought "to maximize the number of products sold, while keeping its premium prices high and minimizing its marketing expenses." Compl. ¶ 5.

On the October 25 earnings call, Gorjanc stated that Arlo's Generally Accepted Accounting Principles ("GAAP") gross margins for the fourth quarter of 2018 were expected to be between 12.4% and 14.4%, and Arlo expected its non-GAAP gross margins to be between 13% and 15%. Earnings Call at 5; Compl. ¶ 56. Gorjanc also stated that "normally, [Arlo] would have a new product in the market for all of Q4" and that "the majority of that promotion [would be for] the products [that] have been out therefore for quite a whole, and [Arlo] do[es]n't have a big new one hitting in channel all of Q4 like we would normally have." Earnings Call at 6; Compl. ¶ 56. Following the call, Arlo's share price fell from $14.46 to $12.69 per share. Compl. ¶ 13.

On or about Friday, November 30, 2018, Arlo introduced its new product, Arlo Ultra. Compl. ¶¶ 14, 62. The November 30 press release stated that Ulra "is slated to roll out to the



United States District Court
Northern District of California

market in the first quarter of 2019." Adams Decl., Ex. C ("Nov. Press Release"), at 1, ECF 87-3; Compl. ¶ 62. On Monday, December 3, 2019, Arlo issued another press release to report a delay of Ultra shipments due to a quality issue with the battery from one of the suppliers that was discovered during Ultra's final testing phase. Compl. ¶¶ 16, 63, 66. The December 3 press release stated that when the company provided its original guidance for the fourth quarter of 2018, it had expected that Ultra would commence commercial distribution in November 2018. Compl. ¶¶ 17, 66. Because of the battery issue, however, Arlo explained that the company anticipates that Ultra distribution will begin in January 2019. Compl. ¶¶ 17, 66. Accordingly, Arlo lowered its fourth quarter 2018 financial guidance: Arlo now expected its net revenue to be between $125 and $130 million (its original guidance had been between $140 and $150 million), its non-GAAP gross margin to be about 10%, and its non-GAAP operating loss to be about 20% of its revenue. Compl. ¶¶ 16, 64, 66. Arlo's share price dropped to $9.28 per share. Compl. ¶¶ 20, 65.

### B. Procedural Background

On January 22, 2019, Plaintiff Spencer Wong filed this putative securities class action lawsuit against Defendants McRae, Gorjanc, Lo, and Kim (the "Individual Defendants"), and Arlo. ECF 1. On May 7, 2019, the Court appointed Plaintiff Matis Nayman ("Plaintiff") as lead plaintiff, Keller Lenkner LLC as lead counsel, and Browne George Ross LLP as liaison counsel. ECF 49.

On June 7, 2019, Plaintiff filed the Amended Complaint against Arlo, Netgear, the Individual Defendants, and the Underwriter Defendants (collectively "Defendants"). ECF 55. The Amended Complaint alleges that the Registration Statement and Prospectus were negligently prepared because they "contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading." Compl. ¶¶ 55, 76. For example, the Amended Complaint alleges that "the Registration Statement contained materially false statements and omitted material information relating to the Company's ability to innovate new products, charge premium prices and maintain its leadership position and gross margins." Compl. ¶ 77. Specifically, the Amended Complaint points to parts of the Registration Statement about Arlo's product introductions, prior revenue, growth strategy, and plans for the future. Compl. ¶¶ 77-86.

The Amended Complaint alleges that these statements were materially false or misleading because the Registration Statement "failed to disclose or misrepresented that [Arlo] was having problems innovating new products, and that new Arlo products would not be ready for sale during the upcoming holiday season." Compl. ¶ 86. Finally, the Amended Complaint alleges that the Registration Statement fails to comply with Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(iii), because Defendants did not "disclose known trends, events, or uncertainties that were having, and were reasonably likely to have, an impact on Arlo's continuing operations." Compl. ¶¶ 55, 76, 87.

In addition, the Amended Complaint alleges that the November 30 press pelease was "materially false and misleading" because "it failed to disclose the delay in the release of [Ultra] or the revised guidance." Compl. ¶¶ 67, 91. The Amended Complaint also alleges that the October 25 earnings call was materially false or misleading because Gorjanc blamed the reduced fourth quarter guidance on "no new products being released in the 2018 fourth quarter," while the December 3 press release "represented that Arlo's October 2018 financial guidance reflected the release of Ultra during the 2018 fourth quarter." Compl. ¶ 92.

Based on these allegations, the Amended Complaint contains four causes of action: (1) violation of Section 11 of the Securities Act, 15 U.S.C. § 77k; (2) violation of Section 15 of the Securities Act, (3) violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC; and (4) violation of Section 20(a) of the Exchange Act. Compl. ¶¶ 99-127.

On August 6, 2019, Defendants moved to dismiss the Amended Complaint arguing that a heightened pleading standard applies to the Section 10(b) and Section 11 claims; Plaintiff fails to allege an actionable misrepresentation or omission with respect to the Registration Statement, October 25 earnings call, and November 30 press release; Plaintiff fails to adequately plead scienter with regard to the Section 10(b) and Rule 10b-5 claim; and Plaintiff fails to allege a control person claim under Section 15 or Section 20(a). Mot. 6-20.

The Court held a hearing on this motion on December 5, 2019.

United States District Court
Northern District of California

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

### B. Rule 9(b) and the Private Securities Litigation Reform Act of 1995

In addition to the pleading standards discussed above, a plaintiff asserting a private securities fraud action must meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also In re VeriFone Holdings*, 704 F.3d at 701. That is, "the complaint must allege specific facts regarding the fraudulent activity, such as the time, date, place, and content of the alleged fraudulent representation, how or why the representation was false or misleading, and in some cases, the identity of the person engaged in the fraud." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1065 (N.D. Cal. 2010).

Similarly, under the PSLRA "the complaint shall specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA further requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-4(b)(2)(A). "To satisfy the requisite state of mind element, a complaint must allege that the defendant[ ] made false or misleading statements either intentionally or with deliberate recklessness." *In re VeriFone Holdings*, 704 F.3d at 701 (brackets and internal quotation marks omitted). The scienter allegations must give rise not only to a plausible inference of scienter, but to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## III. REQUEST FOR CONSIDERATION OF DOCUMENTS INCORPORATED BY REFERENCE AND FOR JUDICIAL NOTICE

Defendants submit a request for the Court to consider documents that are either incorporated by reference into the complaint or judicially noticeable. ECF 86. The Court addresses each request in turn.

### A. Incorporation by Reference

In deciding a Rule 12(b)(6) motion, a court may consider "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for

summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* ("The doctrine of incorporation by reference may apply . . . when a plaintiff's claim about stock fraud is based on the contents of SEC filings."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*

Here, Defendants offer three documents for the Court to treat as part of the Amended Complaint: (1) Arlo's Prospectus, (2) a transcript of the October 25 earnings call, and (3) the November 30 press release. ECF 86, at 2-3. Plaintiff does not oppose this request. Because the Amended Complaint refers extensively to these documents, including heavily quoting each document, the Court finds that these documents are incorporated by reference into the Amended Complaint and GRANTS Defendants' request. *See, e.g.*, Compl. ¶¶ 1, 3, 6-12, 14, 18-19, 22, 35-37, 39, 50-52, 54-59, 62, 67, 76-87, 89-92, 93, 101-02, 104, 106, 114-15.

**B. Judicial Notice**

In deciding a motion to dismiss under Rule 12(b)(6), a Court may also properly consider matters of judicial notice. *Ritchie*, 342 F.3d at 908. Under Federal Rule of Evidence 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Defendants request that the Court take judicial notice of the following documents: (1) Arlo's Prospectus filed with the SEC, (2) a transcript of the October 25 earnings call, (3) the November 30 press release, (4) Statement of Changes in Beneficial Ownership filed by Patrick C.S. Lo on Form 4 with the SEC on August 7, 2018, and (5) Statement of Changes in Beneficial Ownership filed by Christine M. Gorjanc on Form 4 with the SEC on August 10, 2018. ECF 86, at 2-3. Because these documents are public records whose accuracy is not in dispute and because Plaintiff does not object, the Court GRANTS Defendants' request for judicial notice. *See, e.g.*, *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (acknowledging that SEC filings are subject to judicial notice); *Jui-*

*Yang Hong v. Extreme Networks, Inc.*, 2017 WL 1508991, at *10 (N.D. Cal. Apr. 27, 2017) (taking judicial notice of press releases and conference call transcripts); *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 929 (N.D. Cal. 2012) (taking judicial notice of SEC Form 4 submissions).

## IV. DISCUSSION

Defendants move to dismiss each of Plaintiff's four claims. The Court addresses each claim in turn, and in combination where appropriate.

### A. Section 11 of the Securities Act (Count 1)

Defendants argue that the heightened pleading standard of Rule 9(b) applies to Plaintiff's Section 11 claim, and that Plaintiff fails to allege an actionable misrepresentation or omission in the Registration Statement. Mot. 6-17. Specifically, Defendants argue that Plaintiff fails to allege contemporaneous facts showing that Defendants knew of any problems at the time of the IPO. Mot. 7-10. Moreover, Defendants argue that the statements in the Registration Statement are not false or misleading because they are accurate statements about past performance, non-actionable puffery or opinions, or forwarding-looking statements protected by the bespeaks caution doctrine. Mot. 10-15.

Plaintiff opposes, arguing that the heightened pleading standard does not apply because the Section 11 claim does not contain allegations of fraud. Opp. 13-14. Even if the heightened pleading standard applies, Plaintiff argues that the allegations are sufficient. Opp. 14. Plaintiff argues that the misrepresentations and omissions from Item 303 of the Registration Statement are actionable because Defendants knew no new product would be released during the entire holiday season. Opp. 18-19. In addition, Plaintiff argues that Defendants had knowledge because of the October 25 earnings call and the temporal proximity of Arlo's IPO to the start of the fourth quarter. Opp. 19-20. Plaintiff also argues that the misrepresentations and omissions are actionable because they were not puffery or opinion statements, and the forward-looking safe harbor does not apply. Opp. 21-24.

#### i. Pleading standard

At the outset, the Court must decide whether the heightened pleading standard applies to Plaintiff's Section 11 claim. It finds that it does. "[T]he particularity requirements of Rule 9(b)



United States District Court
Northern District of California

apply to claims brought under Section 11 when, as here, they are grounded in fraud." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996). To determine whether a complaint sounds in fraud, the Court "must normally determine, after a close examination of the language and structure of the complaint, whether the complaint 'alleges a unified course of fraudulent conduct' and 'relies entirely on that course of conduct as the basis of a claim.'" *Rubke v. Capitol Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). "Where . . . a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud." *Id.*

Here, the Court can assume the Section 11 claim sounds in fraud because Plaintiff's Section 11 and Section 10(b) claims rely on the same factual allegations. Indeed, the conduct forming the basis of the Section 11 claims, *see* Compl. ¶¶ 1-87, 99, 108, is the same as the conduct forming the basis of the Section 10(b) claims, *see* Compl. ¶¶ 1-98, 112. *See In re Bare Escentuals*, 745 F. Supp. 2d at 1068 (finding heightened pleading standard applied where course of conduct for section 10(b) and section 11 claims was "so substantively similar"). And Plaintiff alleges that "[a]t the time of the Registration Statement and during the Class Period, Arlo and the Individual Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of conduct which operated as a *fraud and deceit* upon Lead Plaintiff and the other members of the Class." Compl. ¶ 114; *see In re Daou Sys., Inc.*, 411 F.3d 1006, 1028 (9th Cir. 2005) (applying heightened standard where plaintiff sought "damages resulting from a fraudulent scheme and course of business by defendants" (emphasis omitted)).

The only difference with the claims is that Plaintiff expressly states that the Section 11 allegations disclaim fraud as a basis, *see* Compl. ¶¶ 88, 99, 108 ("Lead plaintiff disclaims any reliance upon these allegations or incorporate of these allegations in his Securities Act claims."), and the Section 10(b) claims use terminology that is more consistent with so-called fraudulent behavior, *see* Compl. ¶¶ 90-92, 114. But, "it is the conduct pled that matters – not necessarily the words with which plaintiff[] artfully seek to allege [his] claims." *In re Bare Escentuals*, 745 F.

United States District Court
Northern District of California

Supp. 2d at 1068.

Therefore, because "the course of conduct pled in connection with [Plaintiff's] section 11 claim is so substantively similar to the conduct pled in connection with [Plaintiff's] section 10(b) claim" – at least with respect to the Registration Statement – the Court concludes that Plaintiff's Section 11 claims do, in fact, sound in fraud. Thus, the heightened pleading standard of Rule 9(b) applies, and Plaintiff must plead his Section 11 claim with particularity.

**ii. Applicable law**

Section 11 of the Securities Act contains a private right of action for purchasers of a security if the issuer publishes a registration statement in connection with the security that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements not misleading." 15 U.S.C. § 77k(a). "To prevail in such an action, a plaintiff must prove (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Rubke*, 551 F.3d at 1161 (internal quotation marks omitted). "By definition, a plaintiff must show that a purported misstatement in a registration statement was misleading at the time the registration statement was issued." *In re: Resonant Inc. Sec. Litig.*, No. CV1501970SJOPJWX, 2016 WL 1737959, at *7 (C.D. Cal. Feb. 8, 2016). For example, "[a] claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective." *Rubke*, 551 F.3d at 1164.

Because the heightened pleading standard applies here, the Amended Complaint must "state with particularity the circumstances constituting fraud"; that is, "the complaint must "set forth what is false or misleading about a statement, and why it is false." *Id.* at 1161 (internal quotation marks omitted). Plaintiff can satisfy this requirement "by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants." *Id.* (internal quotation marks omitted).

**iii. Discussion**

Plaintiff fails to state a Section 11 claim because the Amended Complaint does not show

that the Registration Statement was false or misleading when it was issued. The Amended Complaint alleges that the Registration Statement contained materially false or misleading statements or omissions because "the Registration Statement failed to disclose or misrepresented that [1] [Arlo] was having problems innovating new products, and [2] new Arlo products would not be ready for sale during the upcoming holiday season." Compl. ¶ 86. The Registration Statement became effective on August 2, 2018. Compl. ¶ 53. The Amended Complaint, however, contains no facts showing that Defendants knew at that time that Arlo had a problem innovating new products or that no new Arlo product would be ready for sale during the upcoming holiday season. *See Rubke*, 551 F.3d at 1164 ("A claim under section 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement became effective.").

While Arlo did not, in fact, release a product during the fourth quarter of 2018, Plaintiff has not shown that at the time of the Registration Statement Defendants knew that would be the case. Indeed, the Registration Statement stated that two new products (the Arlo Audio Doorbell and Arlo Chime) would be "the latest additions to join the growing Arlo ecosystems later this year." Reg. Statement, at 113. And just because "subsequent developments make a statement in a public filing false or misleading, . . . does not mean that a defendant committed a misrepresentation when the defendant initially made the public filing." *In re: Resonant Inc.*, 2016 WL 1737959, at *7. Plaintiff argues that Defendants knew of these problems at the time of the IPO because the IPO was only 54 days before the start of the fourth quarter and because of the October 25 earnings call. Opp. 19-21. These allegations are insufficient, however to show, that *at the time* of the Registration Statement the Defendants knew that Arlo was having problems.

To adequately state a cause of action under Section 11, Plaintiff must allege facts showing that Defendants were aware that no products would be released in the fourth quarter of 2018 and that Arlo was having trouble innovating new products at the time the public filings were made. Accordingly, because Plaintiff may cure these deficiencies with amendment, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss the Section 11 claim.

United States District Court
Northern District of California

**B. Section 10(b) of the Exchange Act and Rule 10b-5 (Count 3)**

Next, Defendants argue that Plaintiff fails to state a Section 10(b) or Rule 10b-5 claim because he has not alleged an actionable misrepresentation or omission in the October 25 earnings call or November 30 press release, and Plaintiff has failed to adequately plead scienter. Mot. 15-20. Specifically, Defendants argue that Plaintiff fails to allege an actionable misrepresentation or omission because Plaintiff mischaracterizes the October 25 earnings call and the statements in the November 30 press release are nonactionable puffing or verifiable statements. Mot. 15-17. In addition, Defendants argue that there was no duty to disclose the problems with Ultra earlier than it did. Mot. 16-17. Lastly, Defendants argue that Plaintiff failed to allege scienter for each defendant, failed to make particular allegations to strongly imply that Defendants had contemporaneous knowledge of any purported problems, and failed to allege any inside stock sales. Mot. 17-20.

Plaintiff opposes, arguing that "the Amended Complaint alleges scienter through specific misrepresentations in Arlo's November 30, 2018 Press Release, and the misrepresentations in Arlo's October 25, 2019 Earnings Call." Opp. 25. In particular, Plaintiff argues that the November 30 press release failed to disclose that Ultra would be delayed or that its fourth quarter guidance needed to be revised. Opp. 26. Based on the December 3 press release and core operations doctrine, Plaintiff argues that Defendants knew of this information before the November 30 press release. Opp. 26-27. In addition, Plaintiff argues that the December 3 press release contradicts the October 25 earnings call because the earnings call said no new products would be coming in the fourth quarter of 2018, while the December 3 press release said that Ultra distribution was expected during the fourth quarter of 2018. Opp. 28.

**i. Applicable law**

"Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), along with Rule 10b-5, prohibits 'any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.'" *Rubke*, 551 F.3d at 1164 (quoting 17 C.F.R. § 240.10b-5(c)). To state a Section 10(b) claim, a plaintiff must allege "(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or

sale of a security, (4) transaction and loss causation, and (5) economic loss." *Id.* (internal quotation marks omitted).

All claims brought under Section 10(b) and Rule 10b-5 must meet the particularity requirements of Rule 9(b) and the PSLRA. *In re Daou Sys.*, 411 F.3d at 1014. "To adequately plead scienter under the PSLRA, a plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Jackson v. Fischer*, No. C 11-2753 PJH, 2015 WL 1143582, at *15 (N.D. Cal. Mar. 13, 2015) (quoting 15 U.S.C. § 78u–4(b)(2)). "'Scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). In the Ninth Circuit, "scienter requires a strong inference of, at a minimum, deliberate recklessness." *Id.* (emphasis and internal quotation marks omitted); *see Jackson*, 2015 WL 1143582, at *15 ("An actor is deliberately reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." (brackets omitted)). "A strong inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Jackson*, 2015 WL 1143582, at *15 (internal quotation marks omitted). "Where, as here, the Plaintiffs seek to hold individuals and a company liable on a securities fraud theory, we require that the Plaintiffs allege scienter with respect to each of the individual defendants." *Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014).

**ii. Discussion**

Plaintiff fails to state a claim under Section 10(b) and Rule 10b-5 because he fails to allege scienter as to each of the Individual Defendants. Indeed, there are no facts or arguments as to the intent of any Individual Defendant in the Amended Complaint or Plaintiff's opposition brief. *See* Compl. ¶¶ 88-92, 112-21; Opp. 26-28. Rather, Plaintiff only alleges facts as to the individual Defendants (McRae, Gorjanc, Lo, and Kim) as a group. Accordingly, Plaintiff fails to state a Section 10(b) or Rule 10b-5 claim. *See Oregon Public Employees*, 774 F.3d at 608

(affirming dismissal of complaint where plaintiff failed to "sufficiently allege the individual Defendants acted with scienter"). Plaintiff's arguments to the contrary are without merit.

First, with regard to the November 30 press release, Plaintiff argues that there is a strong inference of scienter based on the temporal proximity of the December 3 press release and the core operations doctrine. Opp. 26-27. Under a core operations theory, "scienter may be imputed based on the inference that key officers have knowledge of the core operations of the company." *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 969 (N.D. Cal. 2014) (internal quotation marks omitted). "Specifically, falsity may itself be indicative of scienter where it is combined with allegations regarding a management's role in the company that are particular and suggest that the defendant had actual access to the disputed information, and where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (internal quotation marks omitted).

Here, Plaintiff has not sufficiently alleged facts to invoke the core operations doctrine. It is the "rare circumstance[]" when scienter is adequately alleged through this theory, and the Amended Complaint is not one of those rare circumstances. *Mulligan*, 36 F. Supp. 3d at 969. Plaintiff has failed to allege the particular role of each of the Individual Defendants to suggest that they had access to the reduced guidance or Ultra battery testing issues. In addition, Plaintiff has not shown that these facts are "of such prominence that it would be absurd" for the Individual Defendants to claim that they were without knowledge of them. *Zucco Partners*, 552 F.3d at 1000.

Moreover, while the Ninth Circuit has "allowed the temporal proximity of an allegedly fraudulent statement or omission and a later disclosure to *bolster* a complaint," it has "never allowed the temporal proximity between the two, *without more*, to satisfy the requirements of Rule 9(b)." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001) (first emphases added) (internal quotation marks omitted). The same is true of the PSLRA. *Id.* Because Plaintiff does not adequately allege the core operations doctrine, Plaintiff is relying on the temporal proximity of the statements alone to allege scienter. Therefore, Plaintiff has failed to allege scienter as to the



United States District Court
Northern District of California

United States District Court
Northern District of California

November 30 press release.

Second, as to the October 25 earnings call, Plaintiff argues that Gorjanc lied because she stated that no new products would be coming to the market in the fourth quarter of 2018, while the December 3 press release stated that Ultra was expected to commence commercial distribution in November 2018. Opp. 28. Plaintiff argues that he adequately alleges scienter because he specifically alleges that Gorjanc lied on the October 25 earnings call. Opp. 29. The Amended Complaint, however, contains no allegations to show that Gorjanc's statements were not true or that Gorjanc's statements were intentionally false. Additionally, as Defendants point out, Plaintiff misquotes what Gorjanc actually said. The transcript shows she stated there would be no new products "for all of Q4 like we normally would have." Earnings Call at 6; Opp. 15. Thus, Plaintiff's allegation is conclusory, which is insufficient at this stage. *See In re Gilead Scis.*, 536 F.3d at 1055.

Accordingly, Plaintiff fails to allege a claim under Section 10(b) and Rule 10b-5 because he fails to adequately allege scienter. Because Plaintiff may cure these deficiencies with amendment, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss the third cause of action in the Amended Complaint.

**C. Section 15 of the Securities Act (Counts 2) and Section 20(a) of the Exchange Act (Count 4)**

Section 15 of the Securities Act and Section 20(a) of the Exchange Act both require underlying primary violations of the securities laws. 15 U.S.C. §§ 77o, 78t(a). Because Plaintiff here has failed to adequately plead a violation of Section 10(b) and Section 11, it follows that Plaintiff also has failed to adequately plead violations of Section 15 and Section 20(a).

Accordingly, because these deficiencies may be cured with amendment, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss the second and fourth causes of action in the Amended Complaint.

///

///

///

United States District Court
Northern District of California

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss. Plaintiff may file an amended complaint **on or before January 30, 2020.**

**IT IS SO ORDERED.**

Dated: December 19, 2019

BETH LABSON FREEMAN
United States District Judge