**BROWNE GEORGE ROSS LLP**
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Carl Alan Roth (State Bar No. 151517)
  croth@bgrfirm.com
Ryan D. Evans (State Bar No. 295600)
  revans@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

**KELLER LENKNER LLC**
Ashley C. Keller
  ack@kellerlenkner.com
Aaron M. Zigler
  amz@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Telephone: (312) 741-5222

*Counsel for Matis Nayman and*
*Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| SPENCER WONG, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ARLO TECHNOLOGIES, INC.; MATTHEW McRAE; CHRISTINE M. GORJANC; PATRICK C.S. LO; ANDREW W. KIM; NETGEAR, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GUGGENHEIM SECURITIES LLC; RAYMOND JAMES & ASSOCIATES, INC.; COWEN AND COMPANY, LLC; and IMPERIAL CAPITAL, LLC,<br><br>        Defendants. | Case No. 5:19-cv-00372-BLF<br><br>**CLASS ACTION**<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT THEREOF**<br><br>DATE:    September 17, 2020<br>TIME:    9:00 a.m.<br>CTRM:   3, 5th Floor<br>JUDGE:  Honorable Beth L. Freeman |

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT BACKGROUND ........................................................................... 2

    A.     History of the Litigation.......................................................................... 2

    B.     Plaintiff's Analysis of the Settlement .................................................... 4

    C.     The Proposed Settlement ......................................................................... 4

III.   SUMMARY OF TERMS ................................................................................... 5

IV.    APPLICABLE LEGAL STANDARDS ............................................................. 8

V.     ARGUMENT ..................................................................................................... 9

    A.     The Settlement is the Result of Arm's Length Negotiations ............... 10

    B.     The Settlement Has No Obvious Deficiencies...................................... 10

    C.     The Settlement does not provide preferential treatments for
        segments of the Settlement Class or the Class Representative ............ 11

        1.     All Settlement Class Members will recover their *pro rata*
            share ........................................................................................... 11

        2.     The requested award for reasonable costs and expenses to
            Plaintiff reflects his efforts on behalf of the Settlement
            Class........................................................................................... 12

    D.     The Settlement is within the range of possible approval ..................... 12

    E.     The Proposed Settlement Class Satisfies Rule 23................................ 14

        1.     Rule 23(a): Numerosity.............................................................. 14

        2.     Rule 23(a): Questions of Law or Fact Common to the
            Settlement Class......................................................................... 14

        3.     Rule 23(a): Plaintiff's Claims are Typical ............................... 15

        4.     Rule 23(a): Fair and Adequate Representation........................ 15

        5.     Rule 23(b)(3): Common Questions of Law or Fact
            Predominate ............................................................................... 16

        6.     Rule 23(b)(3): Superiority......................................................... 17

    F.     The Court Should Approve the Proposed Form of Notice and Plan
        for Providing Notice to the Settlement Class....................................... 18

    G.     Attorneys' Fees, Litigation Expenses, and Plaintiff's Expenses ........ 20

    H.     Updated Northern District of California Procedural Guidelines ......... 21

    I.     Proposed Schedule of Events ............................................................... 22

VI.    CONCLUSION................................................................................................. 22

Case No. 5:19-cv-00372-BLF

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**CASES** **PAGE(s)**

3

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
4
    272 F. App'x 9 (2d Cir. 2008) ...............................................................................25

5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................21, 22
6

*In re ATM Fee Antitrust Litig.*,
7
    686 F.3d 741 (9th Cir. 2012) ...............................................................................19

8

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..........................................................................15, 16
9

10

*Booth v. Strategic Realty Tr., Inc.*,
    2015 WL 3957746 (N.D. Cal. June 28, 2015) ...................................................17

11

*Carnegie v. Household Int'l, Inc.*,
12
    376 F.3d 656 (7th Cir. 2004) ...............................................................................23

13

*Collins v. Cargill Meat Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ........................................................................13
14

15

*Gaudin v. Saxon Mortg. Servs., Inc.*,
    2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ..................................................16

16

*Grant v. Capital Mgmt. Servs. L.P.*,
17
    2013 WL 6499698 (S.D. Cal. Dec. 11, 2013).....................................................14

18

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996) ........................................................................19
19

20

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...........................................................19, 20, 21, 22

21

*Hart v. Colvin*,
22
    2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ...............................................13, 14

23

*Hefler v. Wells Fargo & Co.*,
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ...............................................20, 22
24

25

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................15

26

*Lerwill v. Inflight Motion Pictures, Inc.*,
27
    582 F.2d 507 (9th Cir. 1978) ...............................................................................21

28

**CASES (cont.)**                                                                 **PAGE(s)**

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................18

*Lo v. Oxnard European Motors, LLC*,
   2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ....................................................18

*N.J. Carpenters Health Fund v. Residential Capital LLC*,
   No. 08-cv-8781-HB (S.D.N.Y. July 31, 2015) ..................................................25

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................15

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015) ........................................................................17

*In re NVIDIA Corp. Derivative Litig.*,
   2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ...................................................18

*Ohio Pub. Empls. Ret. Sys. v. Freddie Mac*,
   2006 U.S. Dist. LEXIS 98380 (S.D.N.Y. Oct. 26, 2006) ..................................25

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ..............................................................................17

*Orvis v. Spokane Cty.*,
   281 F.R.D. 469 (E.D. Wash. 2012) .....................................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..............................................................................25

*In re Pfizer Sec. Litig.*,
   No. 04-cv-09866 (S.D.N.Y. Dec. 21, 2016) ......................................................25

*In re Portal Software, Inc.*,
   2007 WL 1991529 (N.D. Cal. June 30, 2007) ...................................................25

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) ............................................................................16

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..............................................................................15

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005) ........................................................................19

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) ........................................................................19

1

**CASES (cont.)**                                                                                     **PAGE(s)**

*In re Sorbates Direct Purchaser Antitrust Litig.*,
   2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ...................................................................25

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ......................................................................................13

*In re Stec Inc. Sec. Litig.*,
   2012 WL 6965372 (C.D. Cal. Mar. 7, 2012).................................................................22

*Steiner v. Am. Broad. Co.*,
   248 F. App'x 780 (9th Cir. 2007) ...............................................................................26

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...............................................................13, 14

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010)................................................................................19

*The Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*,
   2016 WL 314400 (N.D. Cal. Jan. 25, 2016) ..............................................................13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................................................26

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   1988 WL 158947 (W.D. Wash. July 28, 1988) ..........................................................18

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) .....................................................................................13

*Young v. Polo Retail, LLC*,
   2006 WL 3050861 (N.D. Cal. Oct. 25, 2006)............................................................14

*Zepeda v. Paypal, Inc.*,
   2015 WL 6746913 (N.D. Cal. Nov. 5, 2015) .............................................................16

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................................14, 16, 20, 21

**STATUTES**

15 U.S.C. § 78u-4(a)(4) ...............................................................................................26

15 U.S.C. § 78u-4(a)(7) ...............................................................................................23

28 U.S.C. § 1715...........................................................................................................9

**RULES**                                                                                                     **PAGE(s)**

Fed. R. Civ. P. 23(a) .........................................................................................19, 20, 21

Fed. R. Civ. P. 23(b) ................................................................................... *passim*

Fed. R. Civ. P. 23(c) .........................................................................................23, 24, 25

Fed. R. Civ. P. 23(e) .........................................................................................13, 24

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 18:4 (4th ed. 2002) .........................................................................................................19

*Manual for Complex Litigation* (4th ed. 2004) ...........................................................14

Northern District of California Procedural Guidance for Class Action Settlements ............. *passim*

**NOTICE OF MOTION**

TO:      ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, on September 17, 2020 at 9:00 AM, or as soon as it may be heard in the Courtroom of the Honorable Beth L. Freeman, United States District Judge at the United States District Court for the Northern District of California, Courtroom 3, 5th floor of the San Jose Courthouse, 280 S. 1st Street, San Jose, CA 95113, Lead Plaintiff Matis Nayman ("Plaintiff"), on behalf of himself and the Settlement Class[1], by and through counsel, does and will respectfully move this Court for an Order, pursuant to Federal Rule of Civil Procedure ("Rule") 23: (i) granting preliminary approval of a settlement resolving this action ("Settlement"); (ii) certifying the settlement class ("Settlement Class") and appointing Plaintiff as Class Representative; (iii) approving the proposed Notice and directing that notice of the proposed Settlement be disseminated to the Settlement Class; (iv) appointing Keller Lenkner LLC as Class Counsel; (v) setting deadlines for Settlement Class Members to exercise their rights in connection with the proposed Settlement; and (vi) scheduling a hearing date for final approval of the Settlement and Plan of Allocation and application(s) for attorneys' fees and expenses ("Settlement Hearing").

This motion is supported by the below memorandum of points and authorities, the supporting evidence filed herewith, the Court's file in the Action, and such other arguments or evidence as may be presented at the hearing on the motion. A Stipulation and Agreement of Settlement, with annexed exhibits, which were negotiated by the settling parties, is also submitted herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Plaintiff Matis Nayman seeks preliminary approval of a $1.25 million class settlement. The Settlement is the product of an arm's length negotiation among experienced counsel well-versed

---

[1] Capitalized terms used in this Notice that are not otherwise defined shall have the same meaning ascribed to them in the Stipulation and Agreement of Settlement dated June 11, 2010, which is available on the website established for the Settlement at www.ArloSecuritiesLitigation.com.

in the facts and law relevant to this case and bears no obvious defects. The Settlement constitutes a very good result for the Settlement Class, and serves as an excellent and substantial value for individuals with challenging claims, yielding payments to Settlement Class Members of approximately 2.35% of Plaintiff's $53.2 million estimate of total recoverable damages – well within the range of recovery in securities class actions raising claims under the Securities Act of 1933 and the Securities Exchange Act of 1934, such as this one. The Settlement provides for prompt and certain payment, and avoids the need for drawn out litigation.

By any measure, this is a fair, adequate, and reasonable Settlement. While Plaintiff believes in the merits of the claims in the Action, translating merits into a trial victory is not a forgone conclusion. Even then, Settlement Class Members would be unlikely to see any recovery for years due to the lengthy appeals that would inevitably follow. In contrast, this Settlement provides certainty and immediate relief to Settlement Class Members, who will no longer be at risk of losing at trial, being unable to collect on a post-trial judgment, or suffering the years-long frustration of lengthy appeals. The Court should grant preliminary approval so that notice of the Settlement may be distributed to Plaintiff and the Settlement Class Members. *See Procedural Guidance for Class Action Settlements* ("N.D. Cal. Guid."), U.S. District Court for the Northern District of California, http://www.cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018), ¶1(e) (preliminary approval motion should set forth "potential recovery if plaintiffs were to prevail" and "anticipated class recovery under the settlement"); *see also* Declaration of Aaron M. Zigler ("Zigler Decl."), attached hereto as Exhibit A.

## II.     RELEVANT BACKGROUND

### A.  History of the Litigation

The initial complaint in this Action alleged violations of the Securities Act of 1933 (the "Securities Act") and was filed against Defendants Arlo Technologies, Inc. ("Arlo"), Christine M. Gorjanc, Andrew W. Kim, Patrick C.S. Lo, and Matthew McRae (collectively, "Arlo Defendants") on January 22, 2019 in the United States District Court for the Northern District of California. On May 6, 2019, the Court appointed Matis Nayman as Lead Plaintiff, and the firm of Keller Lenkner

LLC as lead counsel ("Lead Counsel"), with the firm of Browne George Ross LLC to serve as liaison counsel. ECF No. 49.

Plaintiff filed the Amended Complaint on June 7, 2019. ECF No. 55. The Amended Complaint alleged violations of (i) § 11 of the Securities Act against Defendants Arlo Technologies, Inc.; Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; Andrew W. Kim; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Deutsche Bank Securities Inc.; Guggenheim Securities LLC; Raymond James & Associates, Inc.; Cowen and Company, LLC; and Imperial Capital, LLC; (ii) § 15 of the Securities Act against Defendants Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; Andrew W. Kim; and NETGEAR, Inc.; (iii) § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder against Defendants Arlo Technologies, Inc.; Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; and Andrew W. Kim; and (iv) § 20(a) of the Exchange Act against Defendants Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; Andrew W. Kim; and NETGEAR, Inc. Plaintiff asserted the Securities Act claims on behalf of persons and entities who purchased or otherwise acquired Arlo common stock pursuant or traceable to Arlo's August 2018 initial public offering.  Plaintiff alleged that the offering materials for the IPO contained material misstatements and/or omissions concerning Arlo's ability to innovate new products and the availability of such products. Exchange Act claims were asserted on behalf of all persons and entities who purchased common stock of Arlo during the period from and including August 3, 2018 through December 3, 2018. Plaintiff alleged that investors who purchased Arlo stock during this period were defrauded through misstatements and omissions in Arlo's Registration Statement and afterward

Following briefing on Defendants' motion to dismiss and oral argument, the Court granted Defendants' motion to dismiss the Amended Complaint and granted Plaintiff leave to amend. Plaintiff filed the operative Second Amended Complaint on February 14, 2020. ECF No. 114. Pursuant to the Private Securities Litigation Reform Act of 1995, all discovery in the Action has been stayed.

### B.  Plaintiff's Analysis of the Settlement

Lead Counsel have conducted a thorough investigation relating to the claims and the underlying events and transactions alleged in this matter. Specifically, the investigation included, among other things: (i) consultation with, and analysis by, damages experts; (ii) detailed reviews of Arlo's public filings, annual reports, press releases, and other publicly available information; (iii) review of analysts' reports and articles relating to Arlo; and (iv) research of the applicable law with respect to the claims asserted in the complaints filed in the litigation and the potential defenses thereto.

Plaintiff and Lead Counsel believe that the claims asserted in the Action have merit. However, Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants, such as motions to dismiss, discovery, expert reports, motions for summary judgment, trial, and appeals. Plaintiff is entering into this Settlement in view of, among other things, the significant funds the Settlement will provide to Settlement Class Members and the avoidance of the uncertainties, burden, risk, and expense of further litigation against the Defendants. Plaintiff and Lead Counsel are mindful of the inherent problems of proof of, and possible defenses to, the securities law violations asserted in the Action. Based on the foregoing, and in acknowledgement of this Court's rulings to this point, Plaintiff and Lead Counsel have concluded that the terms and conditions of the Stipulation and Agreement of Settlement confer substantial benefits upon the Settlement Class; are fair, reasonable, and adequate to the Settlement Class; and that it is in the best interests of the Settlement Class to settle the claims asserted in the Second Amended Complaint against the Defendants.

### C.  The Proposed Settlement

The proposed Settlement of $1.25 million will compensate Settlement Class Members for a significant percentage of their estimated recoverable damages in this case. The Settlement Class Members who are eligible for a payment under the Settlement all fall within the definition of the Settlement Class proposed in the operative Second Amended Complaint. ECF No. 114, ¶ 97.

Within 10 calendar days of filing the Stipulation and Agreement of Settlement, attached hereto as Exhibit B, Defendants will complete service on the appropriate federal and state

1    government officials of all notices required under the Class Action Fairness Act, 28 U.S.C. § 1715,

2    and will thereafter notify Lead Counsel as to completion of such service. *See* N.D. Cal. Guid. ¶ 10

3    (CAFA notice).

4    **III.    SUMMARY OF TERMS**

5         Upon the effectuation of the Settlement, Plaintiff and the Settlement Class Members will

6    be deemed to have released all Settlement Class Claims against each of the Released Persons, as

7    defined in the Stipulation and Agreement of Settlement. Proof of Claim forms executed by any

8    claimant will release the Settlement Class Claims against the Released Persons in a form attached

9    to the Settlement. Upon the effectuation of the Settlement, Defendants will be deemed to have

10   released and dismissed all Defendant Claims against the Plaintiff and the Settlement Class

11   Members, and shall be forever permanently barred, enjoined, and restrained from commencing,

12   instituting, asserting, maintaining, enforcing, prosecuting, or otherwise pursuing, either directly or

13   in any other capacity, any of the Defendant Claims against the Plaintiff, Lead Counsel and their

14   attorneys, and all other Settlement Class Members in the Action or in any other action or any

15   proceeding, in any state, federal, or foreign court of law or equity, arbitration tribunal,

16   administrative forum, or other forum of any kind.

17        As full and complete consideration for the Settlement, the Arlo Defendants will pay the

18   Settlement amount into an escrow account within fifteen business days of the later of (i) the Court

19   granting preliminary approval of the Settlement; or (ii) receipt by Arlo's counsel from Lead

20   Counsel of complete and accurate wiring instructions, payment address, and a complete and

21   accurate W-9 form. Other than this obligation, under no circumstances will any Defendant have

22   any obligation to make any payment pursuant to the Settlement, and no responsibility for, or

23   liability or obligation whatsoever, to anyone, with respect to the Settlement Fund, the Net

24   Settlement Fund, the Escrow Account, the Settlement Administrator, the Settlement

25   Administrator's actions, any transaction executed or approved by the Escrow Agent, the

26   maintenance, administration, investment, or distribution of the Settlement Fund or the Net

27   Settlement Fund, the establishment or administration of the Plan of Allocation, the determination,

28   administration, or calculation of claims, the payment or withholding of taxes, the administration

1  of the Settlement, or any losses incurred in connection with such matters. Interest earned on the

2  Settlement Fund will be for the benefit of the Settlement Class Members.

3       Prior to distribution, the Settlement Fund will be used to pay: (i) any taxes; (ii) any Notice

4  and Administration Costs; and (iii) any attorneys' fees and litigation expenses, including Plaintiff

5  awards of reasonable costs and expenses awarded by the Court. The Escrow Agent will bear all

6  responsibility and liability for managing the Settlement Fund for the benefit of the Settlement

7  Class, and cannot assign or delegate its responsibilities without approval of Lead Counsel.

8  Statements of account will be provided to Lead Counsel on a monthly basis until the Judgment

9  becomes Final. The Escrow Account will, to the extent possible, be a "Qualified Settlement Fund"

10  within the meaning of Treasury Regulation § 1.468B-1. The Settlement Administrator, as

11  administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3),

12  will be solely responsible for ensuring that the Escrow Account complies with the requirements

13  and regulations governing Qualified Settlement Funds, for filing all informational and other tax

14  returns (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k))

15  for the Settlement Fund, and for paying all taxes owed with respect to the Settlement Fund.

16       Before the effective date of settlement, up to two hundred fifty thousand ($250,000 USD)

17  of the Settlement amount may be transferred from the Escrow Account to the Settlement

18  Administration Account in order to pay reasonable, necessary, and actually incurred Notice and

19  Administration Costs. After the Judgment becomes Final, any remaining monies in the Settlement

20  Administration Account will be transferred back to the Escrow Account.

21       As part of the Preliminary Approval Order, Plaintiff seeks the appointment of the

22  Settlement Administrator. The Settlement Administrator will administer the Settlement, including

23  but not limited to the process of receiving, reviewing, and approving or denying Proofs of Claim,

24  subject to the jurisdiction of the Court. The Settlement Administrator will administer the

25  Settlement subject to the jurisdiction of the Court and pursuant to the Plan of Allocation. Plaintiff

26  and Lead Counsel are solely responsible for formulation of the Plan of Allocation, and have

27  designed it so as to distribute equitably the Settlement proceeds to the members of the Settlement

28  Class who allegedly suffered losses as a result of the alleged violations of the federal securities

1   law. The Settlement Administrator will mail the Notice and Proof of Claim form to all Settlement

2   Class Members as may be identified through reasonable effort. The Settlement Administrator will

3   also publish a Publication Notice, in the form attached to the Settlement.

4         The Settlement Administrator will, among other duties and obligations, receive Proofs of

5   Claim and determine whether they present valid clams in whole or part, work with Settlement

6   Class Members as needed to help them supplement or clarify their Proofs of Claim, and determine

7   each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized

8   Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized

9   Claimants (as set forth in the Plan of Allocation, or in such other plan of allocation as the Court

10  approves). Any Settlement Class Member who does not submit a timely and valid Proof of Claim

11  will not be entitled to receive any of the proceeds from the Net Settlement Fund, but will otherwise

12  be bound by all of the terms the Settlement, including the terms of the Judgment to be entered in

13  the Action and the releases provided for herein, and will be barred from bringing any action against

14  the Released Persons concerning the Settlement Class Claims.

15        All Proofs of Claim must be submitted by the date specified in the Notice. Each Proof of

16  Claim will be submitted to and reviewed by the Settlement Administrator, which will determine,

17  in accordance with the Settlement, the extent to which individual claimants have Recognized

18  Claims. Administrative determinations of the Settlement Administrator accepting or rejecting

19  claims will be presented to the Court on notice to the parties, for approval by the Court.

20        The Settlement Administrator will allocate proportionate shares of the Settlement Fund to

21  Authorized Claimants based on the Authorized Claimants' Recognized Claim compared to all

22  Recognized Claims. Defendants will have no role in in reviewing, challenging, or approving the

23  Proofs of Claim or in distributing the Net Settlement Fund. After the effective date of Settlement,

24  Lead Counsel will apply to the Court for a Settlement Fund Distribution Order. After the initial

25  distribution of the Net Settlement Fund, the Settlement Administrator will make reasonable and

26  diligent efforts to have Authorized Claimants cash their distribution checks. To the extent any

27  monies remain in the fund nine months after the initial distribution, if Lead Counsel, in

28  consultation with the Settlement Administrator, determines that it is cost-effective to do so, the

1    Settlement Administrator will conduct a re-distribution of the funds remaining after payment of

2    any unpaid fees and expenses incurred in administering the Settlement, including for such re-

3    distribution, to Authorized Claimants who have cashed their initial distributions and as approved

4    by the Court in compliance with the Procedural Guidance for Class Action Settlements. *See* N.D.

5    Cal. Guid. ¶ 8.

6    **IV.     APPLICABLE LEGAL STANDARDS**

7           Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or

8    settlement of class action claims. Preliminary approval is not a dispositive assessment of the

9    fairness of the proposed settlement; rather, preliminary approval assesses only whether the

10   proposed settlement falls within the "range of possible approval." *Collins v. Cargill Meat Sols.*

11   *Corp.*, 274 F.R.D. 294, 301-02 (E.D. Cal. 2011). Preliminary approval establishes an "initial

12   presumption" of fairness, *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

13   2007) (quoting *In re General Motors Corp.*, 55 F.3d 768, 784 (3d Circ. 1995)), such that notice

14   may be given to the class and the class may have a "full and fair opportunity to consider the

15   proposed [settlement] and develop a response." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir.

16   1983).

17          "The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

18   actions." *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at *4 (N.D. Cal. Nov. 9, 2016)

19   (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). In the context of a class

20   settlement, the Court must determine whether the settlement is "'fundamentally fair, adequate and

21   reasonable'" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

22   Preliminary approval of a settlement and notice to the proposed class is appropriate if: "(1) the

23   proposed settlement appears to be the product of serious, informed, non-collusive negotiations,

24   (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class

25   representatives or segments of the class, and (4) falls with[in] the range of possible approval." *The*

26   *Civil Rights Educ. & Enf't Ctr. v. RLJ Lodging Tr.*, No. 15-CV-0224-YGR, 2016 WL 314400, at

27   *11 (N.D. Cal. Jan. 25, 2016) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

28   1079 (N.D. Cal. 2007)). "The initial decision to approve or reject a settlement proposal is

committed to the sound discretion of the trial judge." *Hart*, 2016 WL 6611002, at *4 (quoting *Seattle*, 955 F.2d at 1276).

The Manual for Complex Litigation describes a three-step process for approving a class action settlement: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to class members; and (3) a final approval hearing. *See Manual for Complex Litigation* §21.63 (4th ed. 2004). "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *Hart*, 2016 WL 6611002, at *4 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080). "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Id.* at *5 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). "Courts do not have the ability to 'delete, modify, or substitute certain provisions'; the settlement 'must stand or fall in its entirety.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1026).

Plaintiff requests that the Court take the first and second steps in the approval process by granting preliminary approval and ordering the dissemination of the Notices to Settlement Class Members.

## V.   ARGUMENT

A court "need not conduct a full settlement fairness appraisal before granting preliminary approval . . . ." *Grant v. Capital Mgmt. Servs. L.P.*, No. 10-cv-2471-WQH (BGS), 2013 WL 6499698, at *5 (S.D. Cal. Dec. 11, 2013) (citation omitted). "The Court cannot fully assess all of [the] fairness factors until after the final approval hearing; thus, a full fairness analysis is unnecessary at this stage." *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015). Rather, "[t]he proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *Hart*, 2016 WL 6611002, at *5 (citing *Hanlon*, 150 F.3d at 1027). This analysis involves "both a procedural and a substantive component[,]" and by meeting the four factors outlined in *In re Tableware Antitrust Litig.*, it complies with these dual requirements. *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006); *see also In re Zynga*

*Inc. Sec. Litig.*, 2015 WL 6471171, at *8-11 (granting preliminary approval because settlement was "noncollusive," "lacks obvious deficiencies," "does not improperly grant preferential treatment to class representatives or segments of the class," and was "within the range of possible approval").

### A.  The Settlement is the Result of Arm's Length Negotiations

Weighing in favor of preliminary approval, the Settlement arises out of informed, arm's length negotiations among counsel for the parties. The parties reached their agreement after nearly a year of litigation and mediation. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). It is also important that the Settlement's terms were negotiated by experienced counsel with extensive experience and success in large securities class actions. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("'The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.'" (quoting *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig. v. Baumer*, MDL No. 726, 1989 WL 73211, at *1, *2 (C.D. Cal. March 9, 1989)). Counsel well understand the risks and potential rewards of securities litigation generally, and this case specifically. Counsel's judgment that the Settlement is fair and reasonable is therefore entitled to significant weight. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted). As a result, the Settlement is entitled to a presumption of fairness.

### B.  The Settlement Has No Obvious Deficiencies

The proposed Settlement bears no obvious deficiencies. In its opinion in *In re Bluetooth Headset Prods. Liability Litig.*, the Ninth Circuit pointed to three factors as troubling signs of a potential disregard for the class's interests during the course of negotiation: (a) when class counsel receive a disproportionate distribution of the settlement; (b) when the parties negotiate a "clear sailing" arrangement that provides for the payment of attorneys' fees separate and apart from class

1    funds; or (c) when the parties arrange for fees not awarded to plaintiffs' counsel to revert to the

2    defendants rather than the class. 654 F.3d 935, 947-48 (9th Cir. 2011).

3          None of these potential deficiencies exist here. The proposed Settlement creates a common

4    fund, with no possibility of reversion. *See* N.D. Cal. Guid. ¶1(h) (circumstances of reversion). The

5    funds will be used to cover costs and fees and compensate the Settlement Class Members based

6    on a *pro rata* formula. There is no "clear sailing" provision, no payment of fees separate and apart

7    from the class funds, and no "kicker" provision like the one in *In re Bluetooth*, which would allow

8    unawarded monies to revert to the Defendants. The proposed Settlement Class Notices inform

9    Settlement Class Members that Class Counsel will make a request for attorneys' fees of 25% of

10   the total settlement fund, as well as for reimbursement of certain costs counsel has advanced to

11   date. Requested attorneys' fees do not exceed the Ninth Circuit benchmark of 25% percent (using

12   the "percentage-of-recovery" method accepted in this circuit). *Powers v. Eichen*, 229 F.3d 1249,

13   1256 (9th Cir. 2000). The absence of these warning signs is a further indication of the settlement's

14   fairness. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *9.

15          **C.  The Settlement does not provide preferential treatments for segments of**

16               **the Settlement Class or the Class Representative**

17          The third factor to be considered in determining whether the Settlement should be

18   preliminarily approved is whether the settlement grants preferential treatment to class

19   representatives or subsets of the class. *Zepeda v. Paypal, Inc.*, No. C 10-1668 SBA, 2015 WL

20   6746913, at *5 (N.D. Cal. Nov. 5, 2015). This factor also favors approving this settlement.

21          **1.  All Settlement Class Members will recover their *pro rata* share**

22          The Settlement would be distributed *pro rata* Authorized Claimants based on each

23   Authorized Claimant's Recognized Claim as calculated in the Plan of Allocation. Additionally,

24   there will be no reversion of unclaimed funds to Defendants. Accordingly, the proposed plan of

25   distribution compensates Settlement Class Members based on the type and extent of their injuries

26   (including on a *pro-rata* basis) and, therefore, satisfies the "fair, reasonable and adequate" standard

27   that applies to approval of class settlements. *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-

28   01663-JST, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class

members by awarding a pro rata share' to the class members based on the extent of their injuries.") (citation omitted); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 607 (N.D. Cal. 2015) (approving pro-rata distribution as fair and reasonable).

### 2. The requested award for reasonable costs and expenses to Plaintiff reflects his efforts on behalf of the Settlement Class

In connection with the Settlement, the parties request the reimbursement of reasonable costs and expenses for Plaintiff Matis Nayman in the amount of $15,000 for his role in representing the Settlement Class, to be paid from awarded attorneys' fees and expenses in this matter. As the Ninth Circuit has recognized, such reimbursements "are intended to compensate class representatives for work undertaken on behalf of a class [and] 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted). This request will be submitted simultaneously with the motion for attorneys' fees—and in advance of the deadline for objections—such that members of the Settlement Class that wish to further understand the basis for this request will have an opportunity to review the motion and supporting materials.

As representative of the Settlement Class, Plaintiff has been actively involved in the litigation of this case and, indeed, without its willingness to come forward and prosecute the Action, the Settlement Class Members would have received nothing for their injuries and the Defendants would be left to pursue their conduct unfettered. *See* Declaration of Matis Nayman ("Nayman Decl."), attached hereto as Exhibit C. Plaintiff assisted Class Counsel in investigating and prosecuting the Action, searched for and documents, and considered and weighed the benefits of settlement. In the face of this service and expenditure of resources, an award of $15,000 is reasonable.

### D.  The Settlement is within the range of possible approval

To grant preliminary approval, this Court must decide that the settlement falls within the range of possible approval. *Booth v. Strategic Realty Tr., Inc.*, No. 13-cv-04921- JST, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015). In making this determination, courts evaluate a settlement to ensure it is "fair, reasonable, and adequate" and "not the product of fraud or

1    overreaching by, or collusion between, the negotiating parties." *In re NVIDIA Corp. Derivative*

2    *Litig.*, No. C-06-06110-SBA (JCS), 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008)

3    (quotations omitted).

4         Here, the $1.25 million settlement is approximately 2.35% of estimated recoverable

5    damages if Plaintiff prevailed on behalf of the Settlement Class at trial. Moreover, Defendants

6    have maintained throughout this litigation that no damages can be established in this case

7    whatsoever and that they would prevail on all counts.

8         The Settlement also represents a prompt and tangible recovery, without the considerable

9    risk, expense, and delay of prevailing on summary judgment motions, at trial, and in post-trial

10   litigation. *See, e.g., In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015)

11   ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable

12   to lengthy and expensive litigation with uncertain results."); *In re Wash. Pub. Power Supply Sys.*

13   *Sec. Litig.*, MDL No. 551, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) (finding settlement

14   to be in the "best interests of the class . . . before it is subjected further to the vagaries of litigation").

15   While Plaintiff believes he could have succeeded in establishing each element of his class claims,

16   he would have incurred considerable expenses and undertaken considerable risk in taking this case

17   to trial.

18        In light of the inherent risks of continued litigation, and compared to the prompt recovery

19   of $1.25 million, the Settlement is a good result for the Settlement Class. *See, e.g., Orvis v. Spokane*

20   *Cty.*, 281 F.R.D. 469, 475 (E.D. Wash. 2012) ("[T]he proposed benefit to class members appears

21   to the Court to be within the range of fair and reasonable compensation given the uncertain

22   outcome of the legal arguments and the risks and probable delay for Plaintiff and class members

23   if litigation were to proceed toward trial."); *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009

24   JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) ("Considering the potential risks

25   and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the

26   certainty of delay, and the ultimate uncertainty of recovery through continued litigation, the Court

27   finds that, on balance, the proposed settlement is fair, reasonable, and adequate[.]"). Thus,

28   preliminary approval is merited here.

### E. The Proposed Settlement Class Satisfies Rule 23

Certification is appropriate where the proposed class and the proposed class representative meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. In addition, certification of a class action for damages requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies Rule 23's requirements.

#### 1. Rule 23(a): Numerosity

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). No minimum number has been established, but courts generally find numerosity where class members exceed forty. Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 18:4 (4th ed. 2002). Geographic dispersal of plaintiffs also supports a finding that joinder is impracticable. *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-51 (N.D. Cal. 2005); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 300 (N.D. Cal. 2010), *abrogated on other grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012). In this case, the Settlement Class is geographically dispersed and has hundreds or thousands of members. Accordingly, the numerosity requirement is satisfied.

#### 2. Rule 23(a): Questions of Law or Fact Common to the Settlement Class

The second requirement of Rule 23 is the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2). This requirement is to be "construed permissively," *Hanlon*, 150 F.3d at 1019, and a single issue has been held sufficient to satisfy the commonality requirement. *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996). Here, numerous questions of law and fact are common to the Settlement Class. These common questions include the overriding issue of whether Defendants' behavior injured the Settlement Class, as well as:

(1) Whether the Securities Act was violated by the Defendants;

(2) Whether the Exchange Act was violated by the Defendants;

(3) Whether Defendants omitted and/or misrepresented material facts;

(4) Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(5) Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(6) Whether the price of Arlo common stock was artificially inflated; and

(7) The extent of any damage sustained by Class members and the appropriate measure of damages.

Similar common questions have routinely been found to satisfy the commonality requirement in other securities class actions. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *2 (N.D. Cal. Sept. 4, 2018).

### 3. Rule 23(a): Plaintiff's Claims are Typical

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Typicality is easily satisfied in cases involving allegations inflated stock prices because "[t]he proof that Lead Plaintiff would need to establish his claim would also prove the claims of the proposed Settlement Class. Lead Plaintiff's injury would be common to the injury suffered by the Settlement Class." *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *7. "There is no indication that Lead Plaintiff…would face any unique defenses that could make his claims atypical of the Settlement Class. Because the claims of Lead Plaintiff are typical, this element is satisfied." *Id.*

### 4. Rule 23(a): Fair and Adequate Representation

The final requirement of Rule 23(a) is that the representative plaintiff will fairly and adequately represent the interests of the class. This consists of two separate inquiries. First, this requires that class representatives do not have interests that are antagonistic to or in conflict with

the interests of the class. Second, the proposed class must be represented by counsel of sufficient diligence and competence to fully litigate the case. *Hanlon*, 150 F.3d at 1020; *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, Plaintiff has been actively involved in the litigation of this case. The interests of the Plaintiff and Settlement Class Members are aligned because they all suffered similar alleged injury in the form of inflated stock prices and subsequent losses, and all Settlement Class Members seek the same relief. By proving his own claims, Plaintiff necessarily proves the claims of his fellow Settlement Class Members.

Plaintiff has also retained highly capable and experienced counsel with extensive practice in securities litigation. Plaintiff's counsel was appointed by the Court as lead counsel in this matter on May 6, 2019. They have undertaken the responsibilities assigned to them by the Court and vigorously prosecuted the Action. Plaintiff's counsel have successfully prosecuted numerous securities cases throughout the United States.[2] *See* N.D. Cal. Guid. ¶ 11. His counsel are capable of, and committed to, prosecuting the Action on behalf of the Settlement Class. Their prosecution of this case, and indeed, of the Settlement, demonstrate their diligence and competence. Rule 23(a)(4)'s requirements have been met.

**5.  Rule 23(b)(3): Common Questions of Law or Fact Predominate**

Predominance, under Rule 23(b)(3), "is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "This inquiry focuses on the relationship between the common and individual issues. In particular, the predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *7 (quotations and citations omitted). Common issues relating to the purchase of Arlo's common stock during the relevant period and the losses suffered as a result of Defendants' misrepresentations that officially inflated its price predominate over any questions arguably affecting only individual Settlement Class Members because they are the central issues in the case.

---

[2] Details on Lead Counsel's attorneys' past comparable class settlements can be found at Zigler Decl. ¶ 9

Proof is identical for every member of the Settlement Class. If separate actions were to be filed by each Settlement Class Member in the instant case, each would have to establish the existence of the same alleged misrepresentations and omissions, and each would prove damages using identical analysis. These common questions of law and fact predominate.

### 6.   Rule 23(b)(3): Superiority

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." In the securities context, courts have generally found class actions to be a superior means of resolving plaintiffs' claims. *In re Stec Inc. Sec. Litig.*, No. CV 09-8536-JVS MLGX, 2012 WL 6965372, at *10 (C.D. Cal. Mar. 7, 2012) ("Class actions 'have proved useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of defendants ... the ultimate effectiveness of the federal remedies in this area may depend in large measure on the applicability of the class action device.'") (*quoting Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir.1964)). Here, "a class action is a superior method for adjudicating the controversy. The class likely consists of thousands of investors and resolving these disputes in a single class action would be far more efficient than litigating their cases." *Hefler*. 2018 WL 4207245, at *4. The prosecution of separate actions would also create the risk of inconsistent rulings, and could result in prejudice to the named plaintiff and members of the proposed Settlement Class. Most members of the proposed Settlement Class would be effectively foreclosed from pursuing their claims absent class certification. *Hanlon*, 150 F.3d at 1023 ("many claims [that] could not be successfully asserted individually . . . would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs").

Moreover, the Court need not concern itself with questions concerning the manageability of a trial because the settlements dispose of the need for a trial, along with any "thorny issues" that might arise. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (discussing manageability). As one jurist explained, manageability concerns that might preclude certification of a litigated class may

be disregarded with a settlement class "because the settlement might eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004) (Posner, J.). The proposed Settlement Class satisfies the requirements of Rule 23(b)(3).

In light of the foregoing, all the requirements of Rule 23(a) and (b) are satisfied, and there are no issues that would prevent the Court from certifying this Settlement Class for settlement purposes, appointing Plaintiff as class representative, and appointing Keller Lenkner LLC as counsel for the Settlement Class.

### F. The Court Should Approve the Proposed Form of Notice and Plan for Providing Notice to the Settlement Class

The Court should approve the form and content of the proposed Notice and Summary Notice. The Notice is written in plain language and clearly sets out the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class Members of (among many other disclosures) the nature of the Action, the definition of the Settlement Class, the claims and issues, that the Court will exclude from the Settlement Class any Settlement Class Member who requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3)(B). *See* N.D. Cal. Guid. ¶ 4.

With respect to items relating to the Settlement, the Notice also satisfies the separate disclosure requirements imposed by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(7). It states the amount of the Settlement on an absolute and per-share basis; provides a statement concerning the issues about which the Parties disagree; states the amount of attorney's fees and litigation expenses that Lead Counsel will seek; provides the names, addresses, and telephone numbers of Lead Counsel, who will be able to answer questions from Settlement Class Members; and provides a brief statement explaining the reasons why the Parties are proposing the Settlement. *Id*.

The Notice also meets the updated Northern District of California Procedural Guidance for Class Action Settlements in that it includes (1) "contact information for class counsel to answer

questions"; (2) the web address for the settlement website; and (3) "instructions on how to access the case docket." N.D. Cal. Guid. ¶ 3. The Notice will also disclose the date, time, and location of the Settlement Hearing and the procedures and deadlines for the submission of Proof of Claim forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or attorney's fees and expenses.

The proposed Notice program, which is set forth in the Preliminary Approval Order submitted herewith, also readily meets the standards under the Federal Rules and due process. Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise. Fed. R. Civ. P. 23(e)(1).

Plaintiff proposes that the Notice and claims process be administered by the Angeion Group, an independent settlement and claims administrator selected by Plaintiff after a competitive bidding process with two bid proposals. This is the first engagement Lead Counsel has had with Angeion Group in the last two years. *See* N.D. Cal. Guid. ¶ 2 (settlement administration guidelines). If the Court preliminarily approves the Settlement, Arlo shall cooperate in the production of information with respect to the identification of Settlement Class Members from Arlo's stock purchase records and the Settlement Administrator will mail the Notice and Proof of Claim Form to all identified potential Settlement Class Members. The Settlement Administrator will also use reasonable efforts to give notice to brokerage firms and other nominees who purchased Arlo common stock during the Class Period on behalf of other beneficial owners. These nominee purchasers will either forward the Notice or provide the names and addresses of the beneficial owners to the Settlement Administrator, which will then promptly send the Notice by first class mail to such identified beneficial owners. the Settlement Administrator will also cause the Publication Notice, which provides an abbreviated description of the Action and the proposed Settlement and explains how to obtain the more detailed Notice, to be published in the national

media periodical Investor Business Daily, and will publish the Notice and other materials on a website to be developed for the Settlement.

Courts routinely find that comparable notice programs, combining individual notice by first class mail to all class members who can reasonably identified, supplemented with publication notice, meet all the requirements of Rule 23 and due process. *See In re Portal Software, Inc.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the 'best notice practicable under the circumstances,' as mandated by FRCP 23(c)(2)(B)"); *In re Sorbates Direct Purchaser Antitrust Litig.*, 2002 WL 31655191, at *1 (N.D. Cal. Nov. 15, 2002).

The Settlement Administrator's fees are estimated to be approximately $97,542.00.

### G.  Attorneys' Fees, Litigation Expenses, and Plaintiff's Expenses

As explained in the Notice, Lead Counsel intends to seek an award of attorneys' fees for all Plaintiff's Counsel in an amount not to exceed 25% of the Settlement Fund (i.e., 25% of the Settlement amount, plus interest earned thereon), and reimbursement of Litigation Expenses. Lead Counsel will provide much more detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final Settlement Hearing. However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel may request is the result of an ex ante negotiation by a sophisticated Plaintiff, and is the standard 25% benchmark percentage for attorneys' fees in the Ninth Circuit, *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989), and is within the range of percentage fees awarded in comparable class securities class actions with significant contingency fee risks, *see, e.g., In re Pfizer Sec. Litig.*, No. 04-cv-09866, slip op. at 2 (S.D.N.Y. Dec. 21, 2016) (awarding 28% of $486 million settlement); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) (21.4% of $455 million settlement), *aff'd*, 272 F. App'x 9 (2d Cir. 2008); *Ohio Pub. Empls. Ret. Sys. v. Freddie Mac*, 2006 U.S. Dist. LEXIS 98380, at *4 (S.D.N.Y. Oct. 26, 2006) (20% of $410 million settlement); *N.J. Carpenters Health Fund v. Residential Capital LLC*, No. 08-cv-8781-HB, slip op. at 2 (S.D.N.Y. July 31, 2015) (20.75% of $335 million settlement); *see also* N.D. Cal. Guid. ¶ 6.

Moreover, while Lead Counsel's review of its time is not yet complete, Lead Counsel's lodestar is in excess of $607,830.00, and a 25% fee award would therefore represent a negative multiplier on counsel's lodestar estimate.  Much larger lodestar multipliers have been approved. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (finding multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (affirming fee representing a lodestar multiplier of 6.85 as "well within the range of multipliers that courts have allowed"). Moreover, the lodestar cross-check should be applied in a flexible manner so that counsel do not have a disincentive to resolve the case at a relatively early stage, where, as here, they are able to obtain a favorable result for the class early in the litigation. *See Vizcaino*, 290 F.3d at 1050 n.5. If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at final approval.

Lead Counsel also intend to seek reimbursement of litigation expenses in an amount not to exceed $21,345.03, which includes costs of retaining experts. Lead Counsel also intend to seek an award for Plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(4), as reimbursement for his time and expenses in representing the Settlement Class in an amount up to an aggregate of $15,000. Lead Counsel believes this amount is fully supported by the substantial work that Plaintiff did throughout this matter, which will be presented to the Court in connection with Plaintiff's request for reimbursement. N.D. Cal. Guid. ¶ 7.

Plaintiff has provided invaluable assistance in the prosecution of this case. He has obtained and provided documents, provided information regarding the policies and procedures of Defendants, always made himself available, when needed, including during settlement discussions, and has timely responded to Lead Counsel. Further, Plaintiff's reimbursement is minimal, equating to just 1.2% of the $1.25 million settlement obtained.

### H.  Updated Northern District of California Procedural Guidelines

On November 1, 2018, the Northern District of California updated its Procedural Guidance for Class Action Settlements. As demonstrated throughout this motion. Plaintiff has sought to include all the information requested from the updated Guidelines. Lead Counsel's expenses and costs to date are approximately $21,345.03. Through April 7, 2020, Plaintiff has invested

approximately $607,830.00 in attorneys' fees in this litigation. Lead Counsel plan to request attorneys' fees totaling 25% of the Settlement Fund of $1.25 million, or $312,500.00. A $312,500 attorneys' fee award would be approximately 51.4% of the attorneys' fees invested through April 7, 2020. Plaintiff will invest additional attorney resources between now and the final approval hearing. Plaintiff has endeavored to be fully transparent in submitting this information to provide additional context for establishing the reasonableness of Settlement.

### I.   Proposed Schedule of Events

Plaintiff proposes the following schedule for various Settlement-related events:

| | |
|---|---|
| Deadline for mailing the Notice, publication of the Publication Notice, and posting of Notice and Stipulation on Settlement Website | Twenty (20) calendar days after entry of the Preliminary Approval Order |
| Deadline for filing of papers in support of the Settlement, the Plan of Allocation, and Class Counsel's application for an award of attorneys' fees and expenses | No later than thirty-five (35) calendar days before the Settlement Hearing |
| Deadline for request for exclusion from the Settlement Class; or objections to the Settlement, Plan of Allocation, or the request for attorneys' fees and expenses | No later than twenty-one (21) calendar days before the Settlement Hearing |
| Deadline for reply papers in support of the Settlement, the Plan of Allocation, and Class Counsel's application for an award of attorneys' fees and expenses | No later than seven (7) calendar days before the Settlement Hearing |
| Deadline to submit Proofs of Claim | Postmarked no later than fourteen (14) calendar days before the Settlement Hearing |
| Settlement Hearing | TBD, but no fewer than 100 calendar days after the date of this motion |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff Matis Nayman respectfully requests that this Court grant preliminary approval of the settlement, certify the Settlement Class for settlement purposes,

1   appoint Plaintiff as Class Representative and Keller Lenkner LLC as Class Counsel, approve the

2   forms and methods of notice, and enter the proposed Preliminary Approval Order attached to the

3   Stipulation and Agreement of Settlement.

4

5   Dated: June 12, 2020                         **KELLER LENKNER LLC**

6                                             /s/ Aaron M. Zigler

7                                           Aaron M. Zigler

8                                         *Counsel for Lead Plaintiff*
                                         *Matis Nayman and the Settlement Class*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28