**BROWNE GEORGE ROSS LLP**
Eric M. George (State Bar No. 166403)
   egeorge@bgrfirm.com
Carl Alan Roth (State Bar No. 151517)
   croth@bgrfirm.com
Ryan D. Evans (State Bar No. 295600)
   revans@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

**KELLER LENKNER LLC**
Ashley C. Keller
   ack@kellerlenkner.com
Aaron M. Zigler
   amz@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Telephone: (312) 741-5222

*Counsel for Matis Nayman and*
*Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| SPENCER WONG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARLO TECHNOLOGIES, INC.; MATTHEW McRAE; CHRISTINE M. GORJANC; PATRICK C.S. LO; ANDREW W. KIM; NETGEAR, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GUGGENHEIM SECURITIES LLC; RAYMOND JAMES & ASSOCIATES, INC.; COWEN AND COMPANY, LLC; and IMPERIAL CAPITAL, LLC, <br><br> Defendants. | Case No. 5:19-cv-00372-BLF <br><br> **CLASS ACTION** <br><br> **NOTICE AND MOTION FOR FINAL APPROVAL OF THE SETTLEMENT** <br><br> DATE: <u>March 11, 2021</u> <br> TIME: <u>1:30 p.m.</u> <br> CTRM: 3, 5th Floor <br> JUDGE: Honorable Beth L. Freeman |

1    **PLEASE TAKE NOTICE** that, pursuant to an Order of the Court issued on

2    September 24, 2020 ("Preliminary Approval Order"), on March 11, 2021, at 1:30 p.m., at the

3    United States District Court for the Northern District of California, Courtroom 3, 5th floor of the

4    San Jose Courthouse, 280 S. 1st Street, San Jose, CA 95113, before the Honorable Beth L.

5    Freeman, Plaintiff will move pursuant to Rules 23(e) of the Federal Rules of Civil Procedure for

6    an order granting final approval of the proposed settlement (the "Settlement"), including

7    certifying the Class for settlement purposes only and approving the proposed plan of allocation

8    of the proceeds of the Settlement, as set forth in the Stipulation, between Plaintiff and

9    Defendants.

10    **PLEASE TAKE FURTHER NOTICE** that this motion is supported by the

11    accompanying Memorandum of Points and Authorities; the Declaration of Brittany M.

12    Cudworth, attached thereto as Exhibit A; the Declaration of Matis Nayman, attached thereto as

13    Exhibit B; the Declaration of Aaron M. Zigler in Support of Plaintiff's Motions for Final

14    Approval of Settlement and Attorneys' Fees, Reimbursement of Expenses, and Reimbursement

15    of Plaintiff's Costs and Expenses, attached thereto as Exhibit C; and the revised Stipulation of

16    Settlement and the exhibits filed therewith [ECF No. 132-1].

17

18    Dated: February 4, 2021                    **KELLER LENKNER LLC**

19                                                            /s/ Aaron M. Zigler
20                                                            Aaron M. Zigler
                                                               *Counsel for Lead Plaintiff*
21                                                            *Matis Nayman and the Settlement Class*

22

23

24

25

26

27

28

**BROWNE GEORGE ROSS LLP**
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Carl Alan Roth (State Bar No. 151517)
  croth@bgrfirm.com
Ryan D. Evans (State Bar No. 295600)
  revans@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

**KELLER LENKNER LLC**
Ashley C. Keller
  ack@kellerlenkner.com
Aaron M. Zigler
  amz@kellerlenkner.com
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Telephone: (312) 741-5222

*Counsel for Matis Nayman and*
*Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| SPENCER WONG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARLO TECHNOLOGIES, INC.; MATTHEW McRAE; CHRISTINE M. GORJANC; PATRICK C.S. LO; ANDREW W. KIM; NETGEAR, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GUGGENHEIM SECURITIES LLC; RAYMOND JAMES & ASSOCIATES, INC.; COWEN AND COMPANY, LLC; and IMPERIAL CAPITAL, LLC, <br><br> Defendants. | Case No. 5:19-cv-00372-BLF <br><br> **CLASS ACTION** <br><br> **MEMORANDUM AND POINTS OF AUTHORITY IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT** <br><br> DATE: <u>March 11, 2021</u> <br> TIME: <u>1:30 p.m.</u> <br> CTRM:  3, 5th Floor <br> JUDGE: Honorable Beth L. Freeman |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 2

    A.    History of the Litigation ............................................................................... 2

    B.    Defendants' Position ..................................................................................... 3

    C.    Settlement Negotiations ................................................................................ 3

    D.    Preliminary Approval and Notice ................................................................ 3

III.  ARGUMENT ......................................................................................................... 4

    A.    Standards for Approval of Class Action Settlements .................................... 4

    B.    The Settlement is Fair, Reasonable, and Adequate ....................................... 5

        i.    Rule 23(e)(2)(A): Plaintiff and Lead Counsel Adequately
            Represented the Class ....................................................................... 5

        ii.   Rule 23(e)(2)(B): The Settlement is the Product of Good
            Faith and Informed, Arm's Length, Negotiations ............................ 6

        iii.  Rule 23(e)(2)(C): The Settlement Provides Significant
            Immediate Benefits in Exchange for Compromise of Strong
            Claims ............................................................................................... 6

            1.    The Settlement appropriately balances the risks of
                litigation and the benefit to the Class of a certain
                 recovery ................................................................................ 7

            2.    The claims process is straightforward and
                convenient ............................................................................. 8

            3.    Lead Counsel's requested attorneys' fees and costs
                are reasonable ....................................................................... 9

        iv.   Rule 23(e)(2)(D): The Settlement Treats Class Members
            Equitably Relative to One Another ................................................... 10

    C.    The Settlement Also Meets the Remaining Approval Factors
        Considered in the Ninth Circuit ................................................................... 10

        i.    This Settlement Amount Supports Approval of the
            Settlement ......................................................................................... 11

        ii.   The Recommendation of Experienced Counsel Heavily
            Favors Approval of the Settlement .................................................. 12

        iii.  Reaction of the Class Supports Approval of the Settlement ................... 12

**D.**    **The Plan of Allocation is Fair and Reasonable and Should be Approved by the Court** ................................................................................ 13

**E.**    **Certification of the Settlement Class Under Fed. R. Civ. P. 23 is Appropriate** ....................................................................................... 14

**F.**    **The Notice Satisfied the Requirements of Due Process** ................................. 14

**IV.  CONCLUSION** ................................................................................................ 16

Case No. 5:19-cv-00372-BLF

# TABLE OF AUTHORITIES

**CASES** Page(s)

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F. Supp. 2d 964 (E.D. Cal. 2012)...................................................................12

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...........................................................................10

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .....................................................................7

*Cagan v. Anchor Sav. Bank FSB*,
   1990 WL 73423 (E.D.N.Y. May 22, 1990) .........................................................11

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d. Cir. 2001)...............................................................................11

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab.*
   *Litig.*,
   No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205 (N.D. Cal. May 3,
   2019) ...................................................................................................................5

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ...........................................................................13

*DeJulius v. New England Health Care Employees Pension Fund*,
   429 F.3d 935 (10th Cir. 2005) ...........................................................................15

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).................................................................................12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).............................................................................................15

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)........................................................................8, 12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979) ...........................................................................15

*Fisher Bros., Inc. v. Mueller Brass Co.*,
   630 F.Supp. 493 (E.D.Pa.1985)..........................................................................12

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)..................................................................................7

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
   No. 07 CV 2245 MMA, 2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ...................9

1

**CASES (cont'd)**                                                                                              **Page(s)**

2

3

*Hefler v. Wells Fargo & Co.*,
      No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..................................10

4

*In re Heritage Bond Litig.*,
      No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................13

5

6

*Hicks v. Morgan Stanley & Co.*,
      No. 01-10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)..................................................11

7

8

*In re Immune Response Sec. Litig.*,
      497 F. Supp. 2d 1166 (S.D. Cal. 2007).....................................................................................6

9

*Lewis v. Newman*,
      59 F.R.D. 525 (S.D.N.Y. 1973) .................................................................................................7

10

11

*Lundell v. Dell, Inc.*,
      No. CIVA C05-3970 JWRS, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ............................7

12

13

*Maher v. Zapata Corp.*,
      714 F.2d 436 (5th Cir. 1983) ...................................................................................................15

14

*Mandujano v. Basic Vegetable Prods. Inc.*,
      541 F.2d 832 (9th Cir. 1976) ...................................................................................................13

15

16

*Martin v. AmeriPride Servs., Inc.*,
      No. 08CV440-MMA JMA, 2011 WL 2313604 (S.D. Cal. June 9, 2011) ..............................13

17

18

*In re Mego Fin. Corp. Sec. Litig.*,
      213 F.3d 454 (9th Cir. 2000) ..............................................................................................7, 13

19

*Mendoza v. United States*,
      623 F.2d 1338 (9th Cir. 1980) .................................................................................................15

20

21

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
      246 F.R.D. 156 (S.D.N.Y. 2007) .............................................................................................11

22

23

*Mullane v. Cent. Hanover Bank & Trust Co.*,
      339 U.S. 306 (1950) .................................................................................................................15

24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
      221 F.R.D. 523 (C.D. Cal. 2004)....................................................................................7, 11, 13

25

26

*Officers for Justice v. Civil Serv. Com.*,
      688 F.2d 615 (9th Cir. 1982) ...............................................................................................8, 11

27

*In re Omnivision Techs.*,
      559 F. Supp. 2d 1036 (N.D. Cal. 2007) .............................................................................7, 13

28

**CASES (cont'd)**                                                           **Page(s)**

*Petrovic v. AMOCO Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ...............................................................13

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)........................11

*Republic Nat'l Life Ins. Co. v. Beasley*,
    73 F.R.D. 658 (S.D.N.Y. 1977) ...............................................................7

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ...............................................................12

*S.C. Nat'l Bank v. Stone*,
    749 F. Supp. 1419 (D.S.C. 1990)...............................................................13

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
    No. CV 09-5416 DOC RZX, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) .....................13, 14

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................5

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ...............................................................9

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985) ...............................................................8

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir.1982), *cert. denied sub nom. Coyne v. Weinberger*, 464
U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), *and cert. denied sub nom. Lewy
v. Weinberger*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) .........................11

**Statutes**

Fed. R. Civ. P. 23 ...............................................................5

1

## I.    INTRODUCTION

2    Lead Plaintiff Matis Nayman ("Plaintiff") respectfully submits this memorandum in

3  support of his motion for final approval of the Settlement in this action.  If approved, Settlement

4  Class Members will receive $1,250,000 in cash in exchange for a release from all alleged claims.

5  This amount represents the only realistic, near-term recovery Settlement Class Members could

6  have received in connection with this action (the "Litigation").

7    Plaintiff vigorously pursued this Litigation against the Defendants.  Following the drop of

8  Defendant Arlo Technologies, Inc.'s ("Arlo") stock price, Plaintiff began investigating whether or

9  not Defendants had violated federal securities law.  The investigation was thorough and expansive

10  and included, among other things, a review of all of Arlo's public records.  Unfortunately, Plaintiff

11  was unsuccessful and the Court granted Defendants' motion to dismiss on December 19, 2019, but

12  with leave to amend.

13    With this in mind, Plaintiff renewed his investigation and prepared to file a second

14  amended complaint.  While Plaintiff believes his second amended complaint adequately addressed

15  the Court's prior concerns, there was no guarantee it would be enough to survive Defendants'

16  second motion to dismiss.  Thus, there was considerable risk that Plaintiff would be unable to

17  recover any damages for himself or the Class.  Given that the relative strengths and weaknesses of

18  the claims asserted in the action against the Defendants weighed against the immediate recovery

19  of $1,250,000, Plaintiff believes the Settlement is in the best interests of the Class.

20    By way of this motion, Plaintiff also seeks final certification of the Settlement Class and

21  final approval of the proposed plan of allocation, as described in the Revised Stipulation of

22  Settlement.  If approved, each Class member who submits a timely and valid claim will be entitled

23  to a *pro rata* share of the Settlement Fund based upon his or her ownership of shares of Arlo stock

24  over the relevant corrective disclosures.  The proposed plan of allocation treats all Class members

25  equally and fairly and, importantly, provides for an easy and straightforward administration and

26  distribution.

27    For the reasons stated herein, Plaintiff respectfully requests that the Court grant his motion

28  in its entirety.

1     **II.    STATEMENT OF FACTS**

2         **A.  History of the Litigation**

3            The initial complaint in the Litigation alleged violations of the Securities Act of 1933 (the

4 "Securities Act") and was filed against Defendants Arlo Technologies, Inc. ("Arlo"), Christine M.

5 Gorjanc, Andrew W. Kim, Patrick C.S. Lo, and Matthew McRae (collectively, "Arlo Defendants")

6 on January 22, 2019 in the United States District Court for the Northern District of California.  On

7 May 6, 2019, the Court appointed Matis Nayman as Lead Plaintiff, and the firm of Keller Lenkner

8 LLC as lead counsel ("Lead Counsel"), with the firm of Browne George Ross LLC to serve as

9 liaison counsel.  ECF No. 49.

10            Plaintiff filed an Amended Complaint on June 7, 2019. ECF No. 55.  The Amended

11 Complaint alleged violations of (i) § 11 of the Securities Act against Defendants Arlo

12 Technologies, Inc.; Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; Andrew W. Kim;

13 Merrill Lynch, Pierce, Fenner & Smith Incorporated; Deutsche Bank Securities Inc.; Guggenheim

14 Securities LLC; Raymond James & Associates, Inc.; Cowen and Company, LLC; and Imperial

15 Capital, LLC; (ii) § 15 of the Securities Act against Defendants Matthew McRae; Christine M.

16 Gorjanc; Patrick C.S. Lo; Andrew W. Kim; and NETGEAR, Inc.; (iii) § 10(b) of the Securities

17 Exchange Act of 1934 and Rule 10b-5 thereunder against Defendants Arlo Technologies, Inc.;

18 Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo; and Andrew W. Kim; and (iv) § 20(a) of

19 the Exchange Act against Defendants Matthew McRae; Christine M. Gorjanc; Patrick C.S. Lo;

20 Andrew W. Kim; and NETGEAR, Inc.  Plaintiff asserted the Securities Act claims on behalf of

21 persons and entities who purchased or otherwise acquired Arlo common stock pursuant or

22 traceable to Arlo's August 2018 initial public offering.  Plaintiff alleged that the offering materials

23 for the IPO contained material misstatements and/or omissions concerning Arlo's ability to

24 innovate new products and the availability of such products.  Exchange Act claims were asserted

25 on behalf of all persons and entities who purchased common stock of Arlo during the period from

26 and including August 3, 2018 through December 3, 2018.  Plaintiff alleged that investors who

27 purchased Arlo stock during this period were defrauded through misstatements and omissions in

28 Arlo's Registration Statement and afterward.

Following briefing on Defendants' motion to dismiss and oral argument, the Court granted Defendants' motion with leave to amend on December 19, 2019.  ECF No. 103.  Plaintiff filed the operative Second Amended Complaint on February 14, 2020.  ECF No. 114.  Pursuant to the Private Securities Litigation Reform Act of 1995, all discovery in the Litigation has been stayed.

### B.  Defendants' Position

Defendants deny all allegations, deny having done anything wrong or illegal, deny that any of their statements misled investors, and deny that Plaintiff or investors suffered damages, and maintain that their conduct was at all times proper and in compliance with applicable provisions of law.

### C.  Settlement Negotiations

The settlement negotiations were at arms' length and protracted. The parties began discussions shortly after filing the First Amended Complaint and held a mediation before the Honorable Jay C. Gandhi on November 18, 2019.  Discussions between the parties quickened following the Court's hearing on Defendants' motion to dismiss and continued until June 2020. The parties signed the Stipulation and Agreement of Settlement on June 11, 2020.

Plaintiff filed his Unopposed Motion for Preliminary Approval of the Settlement on June 12, 2020.  ECF No. 127.  After the Court expressed concerns requiring minor modifications during the September 17, 2020 hearing on the motion, Plaintiff filed a Revised Stipulation and Agreement of Settlement on September 24, 2020 [ECF No. 132-1], which was approved on September 24, 2020.  ECF No. 133.

The Revised Stipulation and Agreement of Settlement was reached after the parties engaged in arm's length settlement negotiations.  Based on a thorough understanding of the facts and the law, the parties agreed to the Revised Stipulation and Agreement of Settlement, which consists of a payment of $1,250,000 in cash to the Settlement Class.

### D.  Preliminary Approval and Notice

On September 24, 2020, this Court approved Plaintiff's unopposed motion for preliminary approval, setting a fairness hearing for final approval on March 11, 2020 (the "Order").  ECF No. 133.  The Order also held that the Settlement merited preliminary approval because it was: "(i) the

result of serious, extensive arm's-length and non-collusive negotiations; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; (iv) not improperly granting preferential treatment to the Plaintiff or segments of the Settlement Class; and (v) warranting notice of the proposed Settlement at the Settlement Hearing[.]" *Id.* at ¶ 3.

In addition to holding that the Settlement was preliminarily fair, reasonable, and adequate, the Order also found that the Rule 23 requirements for certification of the Settlement Class were met, and approved the proposed notice set forth in the Revised Stipulation and Agreement of Settlement. *Id.* at ¶¶ 4, 11. The Order also approved Plaintiff's submitted schedule for dissemination of notice to class members. *Id.* at ¶ 11.

Since receiving preliminary approval, the Settlement Administrator, Angeion Group LLC ("Angeion"), has published notice and disseminated approximately 17,628 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice") and the Proof of Claim and Release ("Proof of Claim"). See Declaration of Brittany M. Cudworth ("Cudworth Decl."), attached hereto as Exhibit A, ¶ 8. Furthermore, the website (www.arlosecuritieslitigation.com) provides potential Class members with the pertinent deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims) as well as copies of all pertinent settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Publication Notice). *Id.* at ¶ 11. Also, on October 12, 2020, Angeion caused the Publication Notice of Settlement to be published in *Investor's Business Daily*, a national business newswire disseminated electronically as a press release. *Id.* at ¶ 10. In response to the notice provided by Angeion, there have been no requests for exclusion and only one objection to the Settlement as of January 28, 2021. *Id.* at ¶ 11; Zigler Decl. at ¶ 8.

Lead Counsel and Angeion continue to provide notice to the Class. In accordance with the Preliminary Approval Order, Angeion is filing an affidavit attesting to the proper mailing and publishing of notice of the settlement. Cudworth Decl. at ¶ 4-10.

## III.   ARGUMENT

### A.  Standards for Approval of Class Action Settlements

1    In approving a proposed settlement of a class action under Rule 23(e), the court must find

2    that the proposed settlement is fundamentally fair, adequate, and reasonable.  *See Staton v. Boeing*

3    *Co.,* 327 F.3d 938, 959 (9th Cir. 2003).  Rule 23(e)(2) provides that the court may only approve a

4    proposed settlement that would bind class members if it is "fair, reasonable, and adequate" based

5    upon consideration of the following: "(A) the class representatives and class counsel have

6    adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief

7    provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and

8    appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

9    the method of processing class-member claims; (iii) the terms of any proposed award of attorney's

10    fees, including timing of payment; and (iv) any agreement required to be identified under Rule

11    23(e)(3); and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ.

12    P. 23(e)(2).

13    **B.  The Settlement is Fair, Reasonable, and Adequate**

14    In preliminarily approving the Settlement, the Court carefully analyzed various factors

15    identified by the Ninth Circuit, and concluded that the Settlement was sufficiently "fair,

16    reasonable, and adequate" to the Settlement Class members.  Order at ¶ 3.  Since then, the only

17    new information to consider is the fact that only one shareholder has objected to the Settlement

18    and none have sought to be excluded which, as discussed below, provides further support that the

19    Settlement is fundamentally fair, reasonable, and adequate.  Accordingly, as all applicable factors

20    weighed by the Court during preliminary approval are still in favor of granting final approval, the

21    Court should grant this motion.  *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices*

22    *& Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal.

23    May 3, 2019) (granting final approval of settlement upon finding that its conclusions as to the Rule

24    23(e)(2) and the Ninth Circuit factors that supported preliminary approval still "stand").

25        i.  Rule 23(e)(2)(A): Plaintiff and Lead Counsel Adequately Represented the

26            Class

27    Plaintiff and Lead Counsel have zealously prosecuted this action on behalf of the Class for

28    two years, and will continue to do so throughout the administration of the Settlement to secure and

1   deliver its benefits.   Plaintiff's claims were investigated, through Lead Counsel, including

2   conferring with experts and consultants concerning specialized issues in the case, including

3   drafting the Amended Complaint and Second Amended Complaint, and when analyzing class

4   certification, loss causation, and damages issues; Lead Counsel also drafted the detailed

5   complaints in this matter based on factual investigation and legal research.

6          Plaintiff has also been actively engaged in the Litigation.   This included: (i) researching

7   and collecting documents relevant to the claims in this action; (ii) conferring with counsel

8   concerning the issues and strategy in the Litigation; (iii) reviewing court filings in the Litigation,

9   including the amended complaints, motion to dismiss briefing, and the relevant orders in the

10  Litigation; (iv) conferring with counsel and reviewing periodic reports concerning the work being

11  done; and (v) conferring with counsel with respect to settlement efforts.   See Declaration of Matis

12  Nayman, attached hereto as Exhibit B, ¶ 3.

13         Based upon these facts, the Court preliminary approved the Settlement.   The facts

14  supporting preliminary approval on this point have not changed.   Accordingly, Plaintiffs and Lead

15  Counsel have adequately represented the Class.

16              ii.   Rule 23(e)(2)(B):  The Settlement is the Product of Good Faith and

17                    Informed, Arm's Length, Negotiations

18         Here, the Court found in granting preliminary approval that the Settlement was "the result

19  of serious, extensive arm's-length and non-collusive negotiations."   Order at ¶ 3.   Nothing since

20  the Court's order changes this analysis.   Before the Settlement was ultimately reached, the parties

21  engaged in arm's-length negotiations, with the help of an experienced mediator.   These

22  negotiations took place both before and after Plaintiff's claims were dismissed, and after an

23  investigation of the facts by Plaintiff and his counsel.   "[T]he fact that the settlement agreement

24  was reached in arm's length negotiations . . . create[s] a presumption that the agreement is fair."

25  *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007).   The Court should

26  reaffirm its holding with respect to this analysis.

27              iii.   Rule 23(e)(2)(C):  The Settlement Provides Significant Immediate Benefits

28                    in Exchange for Compromise of Strong Claims

1

                 **1.**    *The Settlement appropriately balances the risks of litigation and the benefit to the Class of a certain recovery*

2

3          The Court must balance the continuing risks of litigation against the benefits afforded to

4 Class members and the immediacy and certainty of a substantial recovery. *See In re Mego Fin.*

*Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ("'a settlement proposal requires a district

5 court to balance a number of factors'"); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd*

6 *v. Bechtel Corp.,* 485 F. Supp. 610, 617 (N.D. Cal. 1979).  In other words, the Court shall consider

7 the vagaries of litigation and compare the significance of immediate recovery by way of the

8 compromise to the mere possibility of relief in the future, after protracted and expensive litigation.

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting

9 *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D.Colo.1974)).  In the context of

10 approving class action settlements, courts attempting to balance these factors have recognized "that

11 stockholder litigation is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D.

12 525, 528 (S.D.N.Y. 1973); *see also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658

13 (S.D.N.Y. 1977).  "In this respect, [i]t has been held proper to take the bird in hand instead of a

14 prospective flock in the bush." *Nat'l Rural*, 221 F.R.D. at 526; *see also Lundell v. Dell, Inc.*, No.

15 CIVA C05-3970 JWRS, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006).  Thus, "[i]n most

16 situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable

17 to lengthy and expensive litigation with uncertain results." *Nat'l Rural*, 221 F.R.D. at 526.

18          Here, a balance of these factors weighs heavily in support of approval of the Settlement

19 and unquestionably outweighs the strong possibility that the Class would receive no recovery at

20 all.  Approval of the Settlement will mean an immediate recovery for eligible claimants.  If not for

21 this Settlement, there would have been months of additional litigation before Plaintiff could prevail

22 on a second motion to dismiss, if at all.  Even if Plaintiff did prevail, there would be a lengthy and

23 expensive period of formal discovery, class certification briefing, summary judgment, and trial,

24 the outcome of which is far from certain.  Therefore, delay, not just at the trial stage, but through

25 post-trial motions and the appellate process as well, could force Class members to wait many more

26 years for any recovery, further reducing its value. *See In re Omnivision Techs.,* 559 F. Supp. 2d

27

28

1036, 1042 (N.D. Cal. 2007) (recognizing the delay and risk inherent in an appeal by defendants and "an immediate and certain award" supports approval of a settlement versus the risk of receiving nothing from continued litigation).  Accordingly, settlement of this litigation will ensure a recovery, eliminating the overwhelming risk of no recovery at all.  The Settlement is, therefore, in the best interest of the Class.

As the Ninth Circuit has made clear, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Com.,* 688 F.2d 615, 624 (9th Cir. 1982).  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation . . . ." *Id.*; *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 19 (N.D. Cal. 1980) ("[a]s a quid pro quo for not having to undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to moderate the measure of their demands.").  Accordingly, the fact that the Class potentially could have achieved a greater recovery after trial does not preclude the Court from finding that the Settlement is within a "range of reasonableness" that is appropriate for approval. *See In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 745 (S.D.N.Y. 1985).

### 2.    The claims process is straightforward and convenient

The Settlement framework provides a simple and well-established methodology for the processing of claims from Class members.  First, the Court-approved Proof of Claim form provides clear instructions to potential Class members concerning the necessary information they must present to Angeion in order it to accurately process their claim and the deadlines by which they must do such.  Based on the information provided by the Class members, Angeion will confirm each Class member's eligibility to participate in the recovery by mechanically calculating their respective "Recognized Loss" based on the Court-approved Plan of Allocation to ultimately determine each Class member's *pro rata* portion of the Net Settlement Fund.  See Cudworth Decl. at ¶ 18.

Once the Court grants final approval and all deadlines have passed, Plaintiff will move the Court for permission to distribute the Net Settlement Fund to Authorized Claimants.  If granted,

1    Angeion will then distribute the funds via check.  After the initial distribution of the Net Settlement

2    Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized

3    Claimants cash their distribution checks.  To the extent any monies remain in the Net Settlement

4    Fund nine (9) months after the initial distribution, if Lead Counsel, in consultation with Angeion,

5    determines that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution

6    of the funds remaining after payment of any unpaid fees and expenses incurred in administering

7    the Settlement per the instructions of Lead Counsel.  If it is determined that the re-distribution is

8    not cost-effective (*e.g.*, the monies remaining are insufficient to cover the expenses associated with

9    a second distribution), the remaining balance shall be subject to a *cy pres* distribution to the

10   University of San Francisco School of Law Investor Justice Clinic.

11               3.      *Lead Counsel's requested attorneys' fees and costs are*
                         *reasonable*

12

13          Lead Counsel's fee request is detailed separately in their Motion for Attorneys' Fees,

14   Reimbursement of Expenses, and Reimbursement of Plaintiff's Costs and Expenses (filed

15   herewith).  For their efforts and the risks of litigating the Litigation, Lead Counsel is requesting

16   that the Court award attorneys' fees in the amount of 25% of the Settlement Fund.  This percentage

17   has repeatedly been found in this jurisdiction to be fair and reasonable to the Class and especially

18   so given the procedural posture and the work performed by Lead Counsel to date.  *See Vizcaino v.*

19   *Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *HCL Partners Ltd. P'ship v. Leap Wireless*

20   *Int'l, Inc.*, No. 07 CV 2245 MMA, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (finding

21   Lead Counsel's requested benchmark fee award of 25% "reasonable in light of the amount of

22   efforts expended to achieve the settlement").  In addition, Lead Counsel seeks reimbursement of

23   expenses in the amount of $21,345.03.  *See* Declaration of Aaron M. Zigler in Support of Plaintiffs'

24   Motion for Final Approval of Settlement and Motion for Attorneys' Fees, Reimbursement of

25   Expenses, and Reimbursement of Plaintiff's Costs and Expenses (the "Zigler Decl."), attached

26   hereto as Exhibit C, ¶ 19.  These expenses were incurred during the course of this litigation and

27   for items that were reasonable and necessary for the purposes of prosecuting this case.  The

28   expenses largely include fees from experts and investigators.  *Id.* at ¶ 20

1    Lead Counsel's accompanying Motion for Attorneys' Fees and Reimbursement of

2  Expenses contains more detail in support of the request.  To the extent necessary for consideration

3  of final approval, Plaintiff respectfully refers to the information contained in the accompanying

4  motion.

5    iv.  Rule 23(e)(2)(D):  The Settlement Treats Class Members Equitably

6    Relative to One Another

7    All Class Members that meet the Class definition with a "Recognized Loss" will receive a

8  share of the Net Settlement Fund.  Cudworth Decl. at ¶ 18; *see also* Notice, ECF No. 132-5, pp. 13-

9  15.  Accordingly, each Class Member that submits a Proof of Claim will have their trade

10  information evaluated against the Class definition and the Plan of Allocation to determine their

11  "Recognized Loss" to ultimately have their *pro rata* share of the Net Settlement Fund calculated

12  and distributed.  Thus, this factor also supports favor of granting final approval.  *See, e.g., Hefler*

13  *v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *12 (N.D. Cal. Sept. 4, 2018)

14  ("the allocation plan disburses the Settlement Fund to class members 'on a pro rata basis based on

15  the relative size of' the potential claims that they are compromising . . . This type of pro rata

16  distribution has frequently been determined to be fair, adequate, and reasonable." (citing cases)).

17    **C.  The Settlement Also Meets the Remaining Approval Factors Considered in the**

18    **Ninth Circuit**

19    The Ninth Circuit has traditionally also considered the following factors when deciding

20  whether a settlement should be approved as fair, reasonable, and adequate to a class:

21    (1) the strength of the plaintiff's case; (2) the risk, expense,
   complexity, and likely duration of further litigation; (3) the risk of

22    maintaining class action status throughout the trial; (4) the amount.

23  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011), (quoting *Churchill*

24  *Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  In the wake of the Rule 23(e)(2) amendment,

25  many of the factors set as the standard for approval of settlements by the Ninth Circuit have been

26  subsumed into the amended rule and for the reasons already discussed in detail *supra* in Section

27  III.B., support the approval of the Settlement.  The remaining and applicable factors not

28

specifically discussed above in the required Rule 23(e)(2) evaluation also weigh in favor of approving the Settlement.

i.   This Settlement Amount Supports Approval of the Settlement

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement. However, in balancing, a proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class." *Nat'l Rural*, 221 F.R.D. at 526.  Balanced against all of the risks outlined above and in the Zigler Declaration, Plaintiff and the Class stand to recover a $1,250,000 cash settlement.   Plaintiff estimates the potential recoverable damages for the Class at $53,200,000.   Defendants would likely have an expert calculate damages at significantly less, and often have an argument for no damages at all.  The Settlement, therefore, represents 2.35% of the total damages that Plaintiff estimated could have been recovered if he were completely successful on all issues of liability and damages in the Litigation.  While "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair," *Officers for Justice*, 688 F.2d at 628, the percentage recovery is within the range of settlements that have received approval by the courts.  *See, e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement representing 1.99% of plaintiffs' estimated damages); *Hicks v. Morgan Stanley & Co.*, No. 01-10071, 2005 WL 2757792, at *7 (S.D.N.Y. Oct. 24, 2005) (approving settlement representing 3.8% of plaintiffs' estimated damages); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d. Cir. 2001) (typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 167 (S.D.N.Y. 2007) (settlement range between 3% and 7% is reasonable); *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423 at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that "best possible recovery would be approximately $121 million"); *Weinberger v. Kendrick*, 698 F.2d 61, 65 (2d Cir.1982), *cert. denied sub nom. Coyne v. Weinberger*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), *and cert. denied sub nom. Lewy v. Weinberger*, 464 U.S.

1    818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983) ($2.84 million settlement upheld which, because of legal

2    difficulties, amounted to "only a negligible percentage of the losses suffered by the class," which

3    were estimated at between $250 million and $1 billion); *Fisher Bros., Inc. v. Mueller Brass Co.*,

4    630 F.Supp. 493, 499 (E.D.Pa.1985) (approving settlement of 0.2% of sales).[1]

5                            ii.    The Recommendation of Experienced Counsel Heavily Favors Approval of

6                                   the Settlement

7              Highly experienced counsel, negotiating at arm's length, have weighed the factors

8    discussed above and endorse the Settlement. "Great weight is accorded to the recommendation of

9    counsel, who are most closely acquainted with the facts of the underlying litigation." *Adoma v.*

10   *Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted); *see also Ellis*,

11   87 F.R.D. at 18. Lead Counsel has decades of experience and expertise in litigating class actions.

12   *See* Zigler Decl. at ¶¶ 3-8. It is Lead Counsel's belief that the settlement before the Court is the

13   best result that could have been achieved for the class given the Court's dismissal order. *Id.* at

14   ¶ 21.

15            This action has been litigated and settled by experienced and competent counsel. That such

16   qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate

17   to the Class heavily favors this Court's approval of the Settlement. *See Rodriguez v. West Publ'g*

18   *Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ("[P]arties represented by competent counsel are better

19   positioned than courts to produce a settlement that fairly reflects each party's expected outcome

20   in litigation."); *Adoma*, 913 F. Supp. 2d at 977.

21                           iii.   Reaction of the Class Supports Approval of the Settlement

22            To date, Angeion has disseminated approximately 17,628 Notice Packets to potential Class

23   members, published the Publication Notice in *Investor's Business Daily*, and maintained a website

24   to field shareholder questions. Cudworth Decl. at ¶¶ 8, 10-11. As of January 28, 2021, there has

25

26

27

28              [1] *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) (noting that there
     is no reason, at least in theory, why a satisfactory settlement could not amount to a "hundredth or
     even a thousandth of a single percent of the potential recovery").

1    been only one objection to the Settlement and no requests for exclusion.  Zigler Decl. at ¶ 8.

2    Plaintiff will respond to any objections and exclusions after their deadlines have passed.

3           It is established that the absence of a large number of objectors to a proposed class action

4    settlement raises a strong presumption that the terms of a proposed class settlement action are

5    favorable to the class members.  *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837

6    (9th Cir. 1976).  "The absence of any objector strongly supports the fairness, reasonableness, and

7    adequacy of the settlement."  *Martin v. AmeriPride Servs., Inc.*, No. 08CV440-MMA JMA, 2011

8    WL 2313604, at *7 (S.D. Cal. June 9, 2011); *see In re Skilled Healthcare Grp., Inc. Sec. Litig.*,

9    No. CV 09-5416 DOC RZX, 2011 WL 280991, at *4 (C.D. Cal. Jan. 26, 2011) ("In this case, the

10   Court interprets the lack of anything other than a de minimus objection as ratification of the

11   settlement terms by the class."); *see also In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005

12   WL 1594403, at *21 (C.D. Cal. June 10, 2005); *Nat'l Rural*, 221 F.R.D. at 528.  Given the absence

13   of meaningful objections at this time, the Court should consider this as additional evidence in

14   support of granting final approval.

15          **D.  The Plan of Allocation is Fair and Reasonable and Should be Approved by the**

16              **Court**

17          Assessment of a plan of allocation of settlement proceeds in a class action under Fed. R.

18   Civ. P. 23 is governed by the same standards of review applicable to the settlement as a whole: the

19   plan must be fair, reasonable, and adequate.  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th

20   Cir. 1992); *Omnivision Tech.*, 559 F. Supp. 2d at 1045.  "However, an allocation formula need

21   only have a reasonable, rational basis, particularly if recommended by experienced and competent

22   counsel."  *In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (citation omitted).  There is no

23   requirement that a settlement must benefit all class members equally.  *See Mego*, 213 F.3d at 461;

24   *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) (upholding distribution plan

25   where class members received different levels of compensation and finding that no subgroup was

26   treated unfairly); *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1437 (D.S.C. 1990) (approving

27   settlement where some class members did not share in recovery).  These decisions acknowledge

28   that the goal of a distribution plan is fairness to the class as a whole, taking into account the various

1  disclosures during the Class Period and establishing a claim value based on the market's reaction

2  to each new piece of information.

3        In order to develop a fair distribution plan, Lead Counsel developed the Plan of Allocation

4  in consultation with Angeion using the best estimate of damages that Plaintiff had and that is still

5  the analysis Plaintiff would likely have presented to the trier of fact.  The Plan of Allocation, of

6  course, like Plaintiff's estimate of Class-wide damages itself, assumes complete success on all

7  aspects of liability and damages at trial and post-trial appeals.  Thus, the Plan of Allocation credits

8  all Class members with the best possible result they could have achieved based on the number of

9  Arlo shares they purchased, their cost basis in those shares, and the timing of their purchases and

10 sales of Arlo securities.  Shaping each class member's recovery around these factors is only fair.

11 *Skilled Healthcare*, 2011 WL 280991, at *4.

12       The Plan of Allocation, in full and complete detail, was included in the Notice mailed to

13 Class members and, as of the date of this motion, there has been only one objection.  Cudworth

14 Decl. at ¶ 2; Zigler Decl. at ¶ 8.  Based upon the foregoing, Plaintiff and Lead Counsel submit that

15 the Plan of Allocation will equitably apportion the net Settlement proceeds among all eligible Class

16 members using the principles set forth in the case law cited above, and should be approved.

17       **E.  Certification of the Settlement Class Under Fed. R. Civ. P. 23 is Appropriate**

18       This Court has already concluded that "(a) the number of Settlement Class Members is so

19 numerous that joinder of all members thereof is impracticable; (b) there are questions of law and

20 fact common to the Settlement Class; (c) the claims of the Plaintiff are typical of the claims of the

21 Settlement Class he seeks to represent; (d) Plaintiff fairly and adequately represents the interests

22 of the Settlement Class; (e) questions of law and fact common to the members of the Settlement

23 Class predominate over any questions affecting only individual members of the Settlement Class;

24 and (f) a class action is superior to other available methods for the fair and efficient adjudication

25 of this action."  Order at ¶6.

26       Nothing has changed since the Court's order granting preliminary approval of the

27 Settlement.  Therefore, the Court should reaffirm its holding.

28       **F.  The Notice Satisfied the Requirements of Due Process**

- 14 -                                    Case No. 5:19-cv-00372-BLF

Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all Class members who would be bound by a proposed settlement, voluntary dismissal, or compromise. The notice procedure seeks to reach the greatest number of Class members possible. Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated approximately 17,628 Notice Packets to potential Class members and nominees. Cudworth Decl. at ¶ 8. In addition, Angeion published the Publication Notice in *Investor's Business Daily*, a national business newswire on October 12, 2020, and maintained a website to field Arlo shareholder questions. Cudworth Decl. at ¶¶ 10-11. As of January 28, 2021, there has been one objection and no requests for exclusion to the Settlement. Zigler Decl. at ¶ 8. This notice program was clearly "the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974), and meets the requirements of Fed. R. Civ. P. 23(c) and (e) and due process. *See, e.g.*, *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 945-47 (10th Cir. 2005) (finding notice program akin to the instant one satisfied due process); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

The Notice was also clearly sufficient with respect to its content. *See Maher v. Zapata Corp.*, 714 F.2d 436, 451 (5th Cir. 1983) (notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them . . . ."). Courts have repeatedly sustained notices in cases where the notice included only very general information. *See, e.g.*, *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361-62 (9th Cir. 1979); *Mendoza v. United States*, 623 F.2d 1338, 1351-52 (9th Cir. 1980).

Here, the Notice detailed the Settlement and the releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Lead Counsel would seek in attorneys' fees for prosecuting the Litigation; described Class members' right to request exclusion from the Class or appear through personal counsel of their choosing

1   and/or to object to the Settlement, Plan of Allocation and/or request for attorneys' fees and

2   reimbursement of expenses, the deadlines for asserting these rights and procedures for doing so;

3   and provided addresses, a toll-free telephone number, and a website where Class members could

4   obtain additional information.  The Notice also contained the calculations to be used in determining

5   loss shares; a statement that there is no agreement on the amount of damages; identification of the

6   attorneys for the Class; and the reasons for the Settlement.  Accordingly, the notice to the Class

7   met all requirements of Rule 23(c) and (e), 15 U.S.C. §78u-4(a)(7) of the PSLRA, and due process.

8   **IV.    CONCLUSION**

9         For the reasons set forth above and in the accompanying declarations, Plaintiffs submit

10  that: the Settlement is fair, reasonable and adequate, meets the most stringent requirements for

11  Court approval under Rule 23(e), and it should be approved by the Court; the Plan of Allocation

12  is fair and equitable and should be approved; and the Class meets all of the requirements of Fed.

13  R. Civ. P. 23(a) and (b)(3), and it should receive final certification.

14

15  Dated: February 4, 2021                              **KELLER LENKNER LLC**

16                                  */s/ Aaron Zigler*

17                                  Aaron Zigler
                                                         **KELLER LENKNER LLC**

18                                  Ashley C. Keller
                                                           ack@kellerlenkner.com

19                                  Aaron M. Zigler
                                                           amz@kellerlenkner.com

20                                  150 N. Riverside Plaza, Suite 4270
                                                         Chicago, IL 60606

21                                  Telephone: (312) 741-5222

22                                  **BROWNE GEORGE ROSS LLP**
                                                         Eric M. George (State Bar No. 166403)

23                                    egeorge@bgrfirm.com
                                                         Carl Alan Roth (State Bar No. 151517)

24                                  croth@bgrfirm.com
                                                         Ryan D. Evans (State Bar No. 295600)

25                                  revans@bgrfirm.com
                                                         2121 Avenue of the Stars, Suite 2800

26                                  Los Angeles, California 90067
                                                         Telephone: (310) 274-7100

27                                  Facsimile: (310) 275-5697

28                                  *Counsel for Lead Plaintiff*
                                                         *Matis Nayman and the Class*