**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SPENCER WONG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>ARLO TECHNOLOGIES, INC.; MATTHEW McRAE; CHRISTINE M. GORJANC; PATRICK C.S. LO; ANDREW W. KIM; NETGEAR, INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; DEUTSCHE BANK SECURITIES INC.; GUGGENHEIM SECURITIES LLC; RAYMOND JAMES & ASSOCIATES, INC.; COWEN AND COMPANY, LLC; and IMPERIAL CAPITAL, LLC,<br><br>Defendants. | Case No. 5:19-cv-00372-BLF<br><br>**AMENDED ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES**<br><br>[Re: ECF 140, 143] |

On March 11, 2021, the Court heard Plaintiff Matis Nayman's (1) Motion for Final Approval of Class Action Settlement (Appr. Mot., ECF 140), and (2) Motion for an Award of Attorneys' Fees and Payment of Expenses (Fees Mot., ECF 143). *See* Min. Entry, ECF 149. For the reasons discussed below and those stated on the record at the hearing on the motions, the motions are GRANTED.

I.   **BACKGROUND**

A.   **Factual Allegations**

This is a putative class action for securities fraud brought by Lead Plaintiff Matis Nayman ("Lead Plaintiff") against Defendants Christine M. Gorjanc, Andrew W. Kim, Patrick C.S. Lo, and Matthew McRae (the "Individual Defendants"), Merrill Lynch, Pierce, Fenner & Smith, Inc.,

Deutsche Bank Securities, Inc., Guggenheim Securities, LLC, Raymond James & Associates, Inc., Cowen and Company, LLC, and Imperial Capital, LLC (the "Underwriter Defendants"), NETGEAR, Inc., and Arlo Technologies Inc., (collectively, the "Defendants"). Second Am. Compl. ("SAC") ¶¶ 103-131, ECF 114. Defendant Arlo Technologies Inc. ("Arlo") is a consumer electronics company that specializes in "smart home" security devices, such as cameras, doorbells, and lights. *Id.* ¶ 2. In August 2018, Arlo conducted an initial public offering ("IPO") of its common stock. *Id.* ¶ 3. Arlo sold more than 11 million shares of common stock for $16.00 per share in its IPO. *Id.* ¶ 54. The IPO was underwritten by six financial institutions—the Underwriter Defendants. *Id.* ¶ 38. The Individual Defendants were officers and directors of Arlo during the IPO. Defendant Matthew McRae ("McRae") was the Chief Executive Officer of Arlo and signed or authorized the signing of Arlo's Registration Statement filed with the SEC. *Id.* ¶ 30. Defendant Christine M. Gorjanc ("Gorjanc") was the Chief Financial Officer of Arlo and signed or authorized the signing of Arlo's Registration Statement filed with the SEC. *Id.* ¶ 31. Defendant Patrick C.S. Lo ("Lo") was a Director of Arlo and signed or authorized the signing of Arlo's Registration Statement filed with the SEC. *Id.* ¶ 32. Defendant Andrew W. Kim ("Kim") was a Director of Arlo and signed or authorized the signing of Arlo's Registration Statement filed with the SEC. *Id.* ¶ 33.

In his SAC, Lead Plaintiff alleges that two of the documents prepared prior to the IPO, the registration statement and its prospectus (collectively, the "Registration Statement"), were prepared negligently *Id.* ¶ 55. For example, the Registration Statement emphasized that "the key elements of [Arlo's] growth strategy are to continue to innovate and grow [Arlo's] installed base," and that Arlo "expect[s] to increase [Arlo's] investment in research and development as [Arlo] continue[s] to introduce new and innovative products and services to enhance the Arlo platform." *Id.* ¶¶ 82, 83. The SAC alleges that these statements were materially false or misleading because the Registration Statement "failed to disclose or misrepresented that [Arlo] was having problems innovating new products, and that new Arlo products would not be ready for sale during the upcoming holiday season." *Id.* ¶ 89. The SAC also alleges that the Registration Statement failed to comply with Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(a)(3)(iii), because Defendants

United States District Court
Northern District of California

1   did not "disclose known trends, events, or uncertainties that were having, and were reasonably

2   likely to have, an impact on Arlo's continuing operations." *Id*. ¶¶ 55, 91.

3        Further, the SAC alleges that various press statements after the IPO were "materially false

4   and misleading." *Id*. ¶¶ 18, 69, 96. For example, the November 30 press release "failed to disclose

5   the delay in the release of [Ultra] or the revised guidance." *Id*. ¶ 18. The October 25 earnings call

6   was materially false or misleading because Gorjanc blamed the reduced fourth quarter guidance on

7   "no new products being released in the 2018 fourth quarter," while the December 3 press release

8   "represented that Arlo's October 2018 financial guidance reflected the release of Ultra during the

9   2018 fourth quarter." *Id*. ¶¶ 19, 98. Arlo's share price dropped following each announcement,

10  reaching a low of $9.28 on December 3, 2018. *Id*. ¶¶ 13, 20.

11       Based on these foregoing allegations, the SAC contains four causes of action: (1) violation

12  of Section 11 of the Securities Act, 15 U.S.C. § 77k ("Securities Act"); (2) violation of Section 15

13  of the Securities Act, (3) violation of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b)

14  ("Exchange Act"), and Rule 10b-5 promulgated thereunder by the SEC; and (4) violation of

15  Section 20(a) of the Exchange Act. SAC ¶¶ 103-131.

16       **B.    Procedural History**

17       The initial complaint was filed on January 22, 2019. On May 6, 2019, the Court appointed

18  Matis Nayman as Lead Plaintiff and the firm of Keller Lenkner LLC as lead counsel ("Lead

19  Counsel"), with the firm of Browne George Ross LLC to serve as liaison counsel. *See* Order

20  Granting Mot. for Lead Plaintiff and Counsel, ECF 49.

21       Lead Plaintiff filed his First Amended Complaint on June 7, 2019. *See* First Am. Compl.

22  ("FAC"), ECF 55. Defendants filed a motion to dismiss Lead Plaintiff's FAC on August 6, 2019.

23  *See* Mot. to Dismiss, ECF 85. The parties began arms' length and protracted negotiations shortly

24  after filing the FAC and held a mediation before the Honorable Jay C. Gandhi on November 18,

25  2019. *Id.* On December 19, 2019, the Court granted Defendants' motion to dismiss with leave to

26  amend on the basis that Lead Plaintiff failed to sufficiently allege that Defendants made

27  intentionally false statements. *See* Order Granting Mot. to Dismiss, ECF 103. On February 14,

28  2020, Lead Plaintiff filed his SAC in an attempt to cure these deficiencies. *See* SAC. Discussions

United States District Court
Northern District of California

3

between the parties continued until June 2020, and on June 11, 2020 the parties signed the Stipulation and Agreement of Settlement. *See* Appr. Mot 3.

On September 24, 2020, this Court approved Lead Plaintiff's unopposed motion for preliminary approval. *See* Prelim. Appr. Order, ECF 133. The Preliminary Approval Order held that the Settlement merited preliminary approval because it was: "(i) the result of serious, extensive arm's-length and non-collusive negotiations; (ii) falling within a range of reasonableness warranting final approval; (iii) having no obvious deficiencies; (iv) not improperly granting preferential treatment to the Lead Plaintiff or segments of the Settlement Class; and (v) warranting notice of the proposed Settlement at the Settlement Hearing[.]" *Id.* ¶ 3. In addition to holding that the Settlement was preliminarily fair, reasonable, and adequate, the Preliminary Approval Order also found that the Rule 23 requirements for certification of the Settlement Class were met, and approved the proposed notice set forth in the Revised Stipulation and Agreement of Settlement. *Id.* ¶¶ 4, 11. The Preliminary Approval Order also approved Lead Plaintiff's submitted schedule for dissemination of notice to class members. *Id.* ¶ 11.

The Claims Administrator disseminated approximately 17,628 copies of the Notice of Proposed Settlement of Class Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice") and the Proof of Claim and Release ("Proof of Claim"). *See* Decl. of Brittany M. Cudworth ("Cudworth Decl."), Ex. A, ¶ 8; ECF 140-1. Additionally, the Settlement Administrator, Angeion Group LLC ("Angeion"), created a website, www.arlosecuritieslitigation.com, that provides potential Class members with the deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims) as well as copies of all settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Publication Notice). *Id.* at ¶ 11. On October 12, 2020, Angeion published the Publication Notice of Settlement through the *Investor's Business Daily*, a national business newswire, as an electronic press release. *Id.* at ¶ 10. As of March 9, 2021, a total of 24,719 Notice Packets were disseminated to potential Settlement Class Members and nominees. *See* Suppl. Decl. of Brittany M. Cudworth ("Cudworth Suppl. Decl.") ¶ 3; ECF 148.

The Plan of Allocation was preliminarily approved by this Court. *See* Prelim. Appr. Order

United States District Court
Northern District of California

4

¶ 3. The Plan of Allocation provides that the potential Class members submit a Proof of Claim form to Angeion. Based on the information provided by the Class members, Angeion has confirmed each Class member's eligibility to participate in the recovery by mechanically calculating their respective "Recognized Loss" based on the Court-approved Plan of Allocation to ultimately determine each Class member's *pro rata* portion of the Net Settlement Fund. *See* Cudworth Decl. ¶ 18. Per this Court's grant of final approval, Angeion will distribute the funds via check. After the initial distribution of the Net Settlement Fund, the Claims Administrator will make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. *See* Appr. Mot. 9. To the extent any monies remain in the Net Settlement Fund nine months after the initial distribution, if Lead Counsel, in consultation with Angeion, determines that it is cost-effective to do so, the Claims Administrator will conduct a re-distribution of the funds remaining after payment of any unpaid fees and expenses incurred in administering the Settlement per the instructions of Lead Counsel. *Id.* If it is determined that the re-distribution is not cost-effective (*e.g.*, the monies remaining are insufficient to cover the expenses associated with a second distribution), the remaining balance shall be subject to a *cy pres* distribution to the University of San Francisco School of Law Investor Justice Clinic. *Id.*

On February 4, 2021, Lead Plaintiff filed a motion for final settlement approval. *See* Appr. Mot., ECF 140. On February 9, 2021, Lead Plaintiff filed a motion for attorneys' fees. *See* Fee Mot., ECF 143. On March 11, 2021, the Court held a hearing on the motions (the "Settlement Hearing"). Defendants have agreed to pay $1,250,000 in cash to secure a settlement of the claims in the Action and related claims that could have been brought ("Released Claims"). *Id.* Lead Plaintiff's Counsel represented on the record at the hearing that a total of 6,084 claims had been received, constituting a response rate of approximately 28 %. Three requests for exclusion were received from the named plaintiffs in a case pending in state court. *See* Mot. to Intervene, ECF 130; *see also* Ex. 2, Stipulation and Agreement of Settlement ("Stipulation") 4-5, ECF 132-2. Although the named plaintiffs from the state case, *Avera v. Arlo Technologies, Inc. et al.*, No. 18-CV-339231, initially filed a motion to intervene, *see* Mot. to Intervene, that motion was later withdrawn, *see Notice*, ECF 135. At the hearing, Lead Plaintiff testified that there is one objector

United States District Court
Northern District of California

1  who mailed a letter directly to the Court, criticizing the small amount of money Class members

2  received and claiming the case is meritless. *See letter*, ECF 145. However, the Court noted that the

3  objector cannot have both ways. If the case is truly meritless, then the Class should get nothing.

4  Thus, the Court found that the objection is not meritorious. The Court indicated on the record that

5  both motions will be granted, and this written order memorializes the ruling.

6  **II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

7         To grant final approval of the class action settlement, the Court must determine that (1) the

8  class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the

9  settlement reached on behalf of the class is fair, reasonable, and adequate. *See Staton v. Boeing*

10  *Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties

11  reach a settlement agreement prior to class certification, courts must peruse the proposed

12  compromise to ratify both the propriety of the certification and the fairness of the settlement.").

13         **A.    The Class Meets the Requirements for Certification under Rule 23**

14         To bring a class action, four requirements under Rule 23(a) must be met:

15         (1)    *Numerosity* – the class is so numerous that joinder of all
16                members is impracticable;

17         (2)    *Commonality* – there are questions of law or fact common to
                  the class;

18         (3)    *Typicality* – the claims or defenses of the representative
19                parties are typical of the claims or defenses of the class; and

20         (4)    *Adequacy* – the representative parties will fairly and
                  adequately protect the interests of the class.

21  Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule—

22  those designed to protect absentees by blocking unwarranted or overbroad class definitions—

23  demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

24  620 (1997).

25         In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

26  must show that the action is maintainable under Rule 23(b)(1), (2), *or* (3)." *Id.* at 614 (emphasis

27  added). Lead Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) "questions

28

6

United States District Court
Northern District of California

of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, the Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement. *See* Prelim. Appr. Order ¶ 6. The Court is not aware of any new facts that would alter that conclusion. However, the Court briefly reviews the Rule 23 requirements as follows.

Under Rule 23(a), the Court finds that because the class contains thousands of members (6,084 claims filed as of the March 11, 2021 hearing), joinder of all class members would be impracticable. The commonality requirement is met because the key issues in the case are the same for all class members, including, for example, whether Defendants misrepresented or omitted material facts in its Registration Statement pertaining to Arlo's ability to innovate new products, charge premium prices, and maintain its leadership position and gross margins. *See* Am. Compl. ¶ 95. Lead Plaintiff's claims are typical, if not identical, to those of the class because he purchased or acquired Arlo stocks at (allegedly) artificially inflated prices during the relevant time period and suffered accompanying losses. *See* Nayman Mot. 7, ECF 21; Nayman Decl. ¶¶ 1, 6, ECF 38-1; *see generally* Compl; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (typicality requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members"). Lastly, to determine Lead Plaintiff's adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). Here, the Court finds that both of these conditions are met in the affirmative. Initially, Arlo Group opposed the appointment of Nayman as Lead Plaintiff theorizing that Nayman's prior "difficulty in meeting his own tax obligations" rendered him inadequate to represent the instant putative class. *See* Arlo Group Opp'n 6, ECF 34. However, the Court found that Nayman's tax obligations were satisfied years ago and did not result in criminal charges. *See* Nayman Decl. ¶¶ 3–6. Further, the Court found that

Nayman's prior tax liens or warrants did not raise a credibility issue. *See* Order Granting Mot. for Lead Plaintiff and Counsel. Thus, Nayman did not have any conflicts of interest with other class members. Additionally, the Court found Nayman had the greatest financial interest in the litigation, with alleged losses of approximately $132,019, making him the presumptive lead plaintiff. *See* Order Granting Mot. for Lead Plaintiff and Counsel 4; *see also In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (explaining that the plaintiff with the largest financial stake who meets the Rule 23(a) criteria is presumptively the most adequate plaintiff). Accordingly, the Court appointed Lead Plaintiff Matis Nayman as Class Representative, and Lead Counsel Keller Lenkner LLC as Class Counsel. *See* Order Granting Mot. for Lead Plaintiff and Counsel. Over the course of two years, Lead Plaintiff and Lead Counsel actively represented the class through two amended complaints as a result of a motion to dismiss, negotiations including a mediation, and a settlement of $1,250,000. Therefore, the Court finds that Lead Plaintiff and Lead Counsel still do not have any conflicts of interests with any class members and that both have prosecuted this action vigorously on behalf of the class.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The common questions in this case which would be subject to common proof include (a) whether the Securities Act and the Exchange Act were violated by Defendants; (b) whether Defendants omitted or misrepresented material facts; (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (e) whether the price of Arlo common stock was artificially inflated; and (f) the extent of damage sustained by Class members and the appropriate measure of damages. *See* SAC ¶ 99. These questions predominate. Furthermore, given this commonality, and the number of potential class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are satisfied and that certification of the class for settlement purposes is appropriate.

**B.    The Settlement is Fundamentally Fair, Adequate, and Reasonable**

Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon,* 150 F.3d at 1026. In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable. That test includes the following factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026-27; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing *Hanlon* factors).

Recent amendments to Rule 23 allow the district court to approve a proposal only after a hearing and only on a finding that the proposal is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

In the Advisory Committee notes to the amendment, the Advisory Committee states that "[c]ourts have generated lists of factors to shed light" on whether a proposed class-action settlement is "fair, reasonable, and adequate." Advisory Committee Notes to 2018 Amendments,

9

United States District Court
Northern District of California

Fed. R. Civ. P. 23(e)(2) ("2018 R23 Advisory Notes"). The notes of the Advisory Committee explain that the enumerated, specific factors added to Rule 23(e)(2) are not intended to "displace" any factors currently used by the courts but instead aim to focus the court and attorneys on "the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*; *cf. United States v. Vonn,* 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee Notes provide a reliable source of insight into the meaning of a rule . . . ."). Accordingly, the Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent, bearing in mind the Advisory Committee's instruction not to let "[t]he sheer number of factors" distract the Court and parties from the "central concerns" underlying Rule 23(e)(2).

Because this settlement occurs before formal class certification, the Court must also ensure that the class settlement is not the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946-47 (9th Cir. 2011).

### 1. Adequacy of Notice

"Adequate notice is critical to court approval of a class settlement under Rule 23(e). *Hanlon,* 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Here, the Court preliminary approved the parties' notice procedures. *See* Prelim. Appr. Order ¶ 16. In this motion for final approval, Lead Plaintiff states that they followed this approved notice plan. *See* Appr. Mot. 15. After determining the best way to reach the greatest number of potential members, the Claims Administrator mailed a total of 24,719 notice packets to potential class members and nominees. Cudworth Suppl. Decl. ¶ 3. The notice informed the class members of all key aspects of the Settlement and releases that would be exchanged; summarized the history of the litigation; described the parties and the Class; discussed the settlement negotiations; detailed the Plan of Allocation; detailed the maximum amount that Lead Counsel would seek in attorneys' fees for prosecuting the Litigation; described the Class members' right to request exclusion from the Class or appear through personal counsel of their choosing and/or object to the Settlement,

Plan of Allocation and/or request for attorneys' fees and reimbursement of expenses, and the deadline for asserting these rights and procedures for doing so; and provided an address, toll-free telephone number, and a website where Class members could obtain additional information. *See* Cudworth Decl., Ex. A. The Notice also included the calculations to be used in determining loss shares; a statement that there is no agreement on the number of damages; identification of the attorneys for the Class; and the reasons for the Settlement. Cudworth Decl., Ex. A at 20-22. Class Counsel represented at the hearing that this notice process resulted in approximately 28% of the potential class submitting claims. This response rate is significant.

In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided adequate notice to the class members. *See Lundell v. Dell, Inc.*, Case No. 05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice via email and first-class mail constituted the "best practicable notice" and satisfied due process requirements).

### 2. Rule 23(e)/*Hanlon* Factors

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings. *See Hanlon,* 150 F.3d at 1026.

As discussed above when certifying the class, the Court finds that both Lead Plaintiff and Lead Counsel have adequately represented the class. In its Preliminary Approval Order, the Court appointed Lead Plaintiff Matis Nayman as class representative for the Settlement Class and Lead Counsel Keller Lenkner LLC as class counsel for the Settlement Class after finding no evidence of a conflict between the class representative or class counsel and the rest of the class. *See* Prelim. Appr. Order ¶ 5; *see also* Order Granting Mot. for Lead Plaintiff and Counsel 6-7. No contrary evidence has emerged. For the past two years, Lead Counsel and Lead Plaintiff have zealously prosecuted this action on behalf of the Class. Lead Plaintiff's claims were investigated, through Lead Counsel, who conferred with experts and consultants concerning specialized issues in the

United States District Court
Northern District of California

1   case, including drafting the FAC and SAC and analyzing class certification, loss causation, and

2   damages issues. Lead Counsel also drafted the detailed complaints in this matter based on factual

3   investigation and legal research.

4         Further, Lead Plaintiff has been actively involved in the Litigation. *See* Declaration of

5   Matis Nayman ("Nayman Decl."), Ex. B, ¶ 1; ECF 140-2. He has spent 150 hours in furtherance

6   of the prosecution of the Litigation, which include: (i) researching and collecting documents

7   relevant to the claims in this action; (ii) conferring with counsel concerning the issues and strategy

8   in the Litigation; (iii) reviewing court filings in the Litigation, including the amended complaints,

9   motion to dismiss briefing, and the relevant orders in the Litigation; (iv) conferring with counsel

10  and reviewing periodic reports concerning the work being done; and (v) conferring with counsel

11  with respect to settlement efforts. *See* Nayman Decl. ¶ 3.

12        Thus, the Court finds that Lead Counsel and Lead Plaintiff have continued to represent the

13  class diligently by complying with the notice plan and settlement procedures. *See* Nayman Decl.

14  ¶¶ 4-5. The Court concludes that the adequacy of representation weighs in favor of approval.

15        Next, the Court considers whether that the Settlement was the result of arm's length

16  negotiations. Rule 23(e)(2)(B). Pursuant to Ninth Circuit precedent, the Court must examine the

17  Settlement for additional indicia of collusion that would undermine a *prima facie* arm's length

18  negotiation. Because the Settlement was reached prior to class certification, there is "greater

19  potential for a breach of fiduciary duty owed the class during settlement," and the Court must

20  examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or

21  other conflicts of interest." *In re Bluetooth,* 654 F.3d at 946. Signs of collusion may include (a)

22  disproportionate distributions of settlement funds to counsel; (b) negotiation of attorney's fees

23  separate from the class fund (a "clear sailing" provision); or (c) an arrangement for funds not

24  awarded to revert to the defendants. *Id.* If multiple indicia of implicit collusion are present, the

25  district court has a heightened obligation to assure that fees are not unreasonably high.  *Id.*

26  (quoting *Staton*, 327 F.3d at 965).

27        Here, the parties held a mediation before the Honorable Jay C. Gandhi on November 18,

28  2019. *See* Appr. Mot. 3. Arms-length negotiations also took place before and after Lead Plaintiff's

United States District Court
Northern District of California

claims were dismissed on December 5, 2019, *see* Order Granting Mot. to Dismiss, and after an investigation of the facts by Lead Plaintiff and Lead Counsel. On June 11, 2020, the parties signed the Stipulation and Agreement of Settlement. *See* Appr. Mot 3. The Court finds no evidence that the parties colluded here. Lead Counsel's fee request of 25% of the settlement fund is reasonable under the Ninth Circuit benchmark and no funds revert to Defendants. *See* Fees Mot. 3, *see also* Appr. Mot. 9. The requested fees are discussed in greater detail below. This factor weighs in favor of approval.

Rules 23(e)(2)(C)-(D) specify factors for conducting a "substantive" review of the proposed settlement. The Court discusses each of the enumerated factors in order.

#### a.   Strength of Plaintiffs' Case and Risk of Continuing Litigation

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026.

Here, the Court finds that the parties have done substantial investigation and tested it through the court process with a ruling on Defendants' motion to dismiss. *See* Order Granting Mot. to Dismiss. Lead Plaintiff faced an uphill battle in getting through the pleading stage, including needing overcome a motion to dismiss that raised important and complicated issues. The class would have faced similar risks at trial. These obstacles included Lead Plaintiff's challenges in demonstrating that "Defendants were aware that no products would be released in the fourth quarter of 2018 and that Arlo was having trouble innovating new products *at the time the Registration Statement was filed*" for a Section 11 claim and in rectifying Lead Plaintiff's failure to "allege scienter as to each [i]ndividual [d]efendant" for a Section 10(b) or Rule 10b-5 claim. *See* Order Granting Mot. to Dismiss 11, 13 (emphasis added). The Court finds that if not for this Settlement, the parties would have litigated for months before Lead Plaintiff could prevail on a second motion to dismiss, if at all. Accordingly, the settlement of this litigation provides an early resolution, ensuring a recovery and eliminating the risk of no recovery at all. Thus, the Settlement is in the best interest of the Class. The Court finds that this factor weighs in favor of approval.

United States District Court
Northern District of California

### b. Effectiveness of Distribution Method, Terms of Attorney's Fees, and Supplemental Agreements

The Court must likewise consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court has already approved the Plan of Allocation and has determined that it is reasonable and effective. *See* Prelim. Appr. Order ¶ 3. The "terms of [the] proposed award of attorney's fees," Fed. R. Civ. P. 23(e)(2)(C)(iii), are reasonable as discussed below. There are no supplemental agreements. Fed. R. Civ. P. 23(e)(2)(C)(iv). These factors weigh in favor of approval.

### c. Equitable Treatment of Class Members

Rule 23 also requires consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Consistent with this instruction, the Court considers whether the proposal "improperly grant[s] preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, under the Stipulation, class members who have submitted a Proof of Claim will have their trade information evaluated against the Class definition and the Plan of Allocation to determine their "Recognized Loss" in order to receive payments on a *pro rata* portion of the Net Settlement Fund. *See* Cudworth Decl. ¶ 18. In granting preliminary approval, the Court found that this proposed allocation did not constitute improper preferential treatment. *See* Prelim. Appr. Order. ¶ 3. The Court adheres to its view that the allocation plan is equitable. This factor weighs in favor of approval.

### d. Settlement Amount

"The relief that the settlement is expected to provide to class members is a central concern," though it is not enumerated among the factors of Rule 23(e). 2018 R23 Advisory Notes. The Court therefore considers "the amount offered in the settlement." *Hanlon,* 150 F.3d at 1026. Critical to the determination of adequacy is the ratio of "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware,* 484 F. Supp. 2d at 1080. However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d

14

at 628.

Here, the $1,250,000 cash settlement is only a fraction of Lead Plaintiff's estimation of potential recoverable damages for the Class at $53,200,000. Appr. Mot. 11. Thus, the settlement represents 2.35% of the total damages that Lead Plaintiff estimated could have been recovered if his case was successful on all issues of liability and damages in the Litigation. Other courts have found similar recoveries to be fair and reasonable. *See, e.g.*, *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (finding 3.5% recovery to be within "the median recovery in securities class actions settled in the last few years"); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding 9% recovery to be "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). Accordingly, the amount of the settlement also weighs in favor of approval.

### e.   Counsel's Experience

The Court also considers "the experience and views of counsel." *Hanlon,* 150 F. 3d at 1026. Here, the Court reviewed the resumes of Keller Lenkner LLC as Lead Counsel and Brown George Ross LLP as liaison counsel and was satisfied that Lead Plaintiff made a reasonable choice of counsel. *See* Evans Decl., Exs. D & E; ECF 21-2; *see also* Order Granting Mot. for Lead Plaintiff and Counsel at 7. Aaron M. Zigler, an attorney of Keller Lenkner, also has extensive experience in representing in complex and class action litigation and settlements. Zigler Decl., Ex. C; ECF 140-3. Thus, this factor weighs in favor of approval.

### C.   Objections and Exclusions

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted). Here, Lead Counsel and the Court received one objection from Stephen Lawrence LoCicero, a shareholder of Arlo stocks. *See* Zigler Decl. ¶ 8. However, the Court notes that the objection both criticized the small amount of money class members received and said the case is meritless. Mr. LoCicero cannot have it both ways. If the class is truly meritless, then the Class should get nothing, making a $1,250,000 cash

settlement quite a win under that theory. Mr. LoCicero further criticized the amount of attorneys' fees. However, the fees are reasonable under Ninth Circuit precedent using either the lodestar method or the percentage-of-recovery method. Likewise, there were only three requests for exclusion from the named plaintiffs in *Avera v. Arlo Technologies, Inc. et al.*, No. 18-CV-339231, a case pending in state court. *See* Mot. to Intervene; *see also* Stipulation 4-5. This positive response from the class confirms that the settlement is fair and reasonable.

* * *

Balancing the relevant factors, the Court finds the settlement fair and reasonable under Rule 23(e) and *Hanlon*.

### D.    Conclusion

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable.

Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation is GRANTED.

## III.    MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES

Lead Plaintiff also seeks an award of attorneys' fees totaling $312,500, reimbursement of litigation costs and expenses in the amount of $21,345.03, and a service award of $5,000. Fees Mot. 1-2. The Court also considers the reasonableness of the Settlement Administrator's requested costs. Cudworth Suppl. Decl. ¶ 8.

### A.    Attorneys' Fees and Expenses

#### 1.    Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either

the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942.

Under the percentage-of-recovery method, the attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class. *Id.* Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure." *Id.* (internal quotation marks omitted). However, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 2011). Relevant factors to a determination of the percentage ultimately awarded include "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009).

Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. This amount may be increased or decreased by a multiplier that reflects factors such as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Where the attorneys' investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable." *Id.* Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Id.* Thus even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a

given percentage award." *Id.* "The lodestar cross-check calculation need entail neither mathematical precision nor bean counting. . . . [Courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (internal quotation marks and citation omitted).

An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

### 2. Discussion

Lead Plaintiff seeks an award of attorneys' fees totaling $312,500, which represents 25% of the $1.25 million gross settlement fund, as well as litigation expenses and costs in the amount of $21,345.03. Fees Mot. 1.

Addressing expenses first, the Court does not hesitate to approve an award in the requested amount of $21,345.03. Lead Counsel has submitted an itemized list of expenses by category of expense incurred in connection with this Action, totaling $21,345.03. *See* Zigler Decl. ¶ 20. The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees is reasonable. Using the percentage-of-recovery method, the Court starts at the 25% benchmark. *See In re Bluetooth*, 654 F.3d at 942. Lead Plaintiff requests 25%, given the exceptional results achieved, the risks of the litigation, the difficult nature of securities litigation, and the contingent nature of the fee. Fees Mot. 3-10. Courts have awarded comparable percentages in similar cases. *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *23 (N.D. Cal. Feb. 11, 2016) (25%); *Omnivision*, 559 F. Supp. 2d at 1049 (28%). As of January 22, 2021, Lead Counsel expended 881.7 hours litigating this action. Zigler Decl. ¶ 13. A lodestar cross-check confirms the reasonableness of the requested fees, which amounts to a negative multiplier of 0.43 of the lodestar amount of $732,342.50. *Id.* Courts have found that "[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Aboudi v. T-Mobile USA, Inc.*, No. 12-CV-2169-BTM, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015); *see also Petersen v. CJ Am., Inc.*, No.

United States District Court
Northern District of California

14-CV-2570-DMS, 2016 WL 5719823, at *1 (S.D. Cal. Sept. 30, 2016) (awarding 1.12 multiplier and recognizing that "the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"). Thus, a multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable.

Lead Plaintiff's motion for attorneys' fees and expenses is GRANTED. Lead Plaintiff is awarded expenses in the amount of $21,345.03 and attorneys' fees in the amount of $312,500.00.

### B.   Incentive Award

Lead Plaintiff requests an incentive award in the amount of $5,000.00. Fees Mot. 2. The Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class," but also provides that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."  Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted).

"Incentive awards typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015). Service awards as high as $5,000 are presumptively reasonable in this judicial district. *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015). Lead Plaintiff's participation in this case was substantial and diligent in pursuit of a favorable resolution in this Action. *See* Nayman Decl. ¶ 3. Lead Plaintiff expended 150 hours supervising and participating in the litigation. *Id.* ¶ 7. Lead Plaintiff is a portfolio manager, and but for his role in this Action could have earned $150,000 in gross income through a combination of his hourly rate of compensation and commissions. *Id.* Given the amount of time and assistance Lead Plaintiff put into the case, an incentive award in the amount of $5,000 is appropriate given the achieved settlement. *See Hayes v.*

1 *MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D. Cal.

2 Nov. 21, 2016) (noting that $5,000 incentive awards are presumptively reasonable in the 9th

3 Circuit); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34

4 (C.D. Cal. July 28, 2014) (awarding an incentive award of $6,600 in a securities class action).

5       The Court concludes that the requested $5,000.00 incentive award is appropriate in this

6 case.

7       **C.     Settlement Administrator Costs**

8       The Court also holds that it is appropriate to award Settlement Administrator costs. In its

9 preliminary approval order, the Court approved the appointment of Angeion as the Settlement

10 Administrator and approved its costs in an amount not to exceed $250,000. *See* Prelim. Appr.

11 Order ¶ 9. Angeion has submitted a declaration that as of January 31, 2021, Angeion has incurred

12 $39,171.40 in administrative fees and expenses, and that Angeion estimates they will incur

13 approximately $65,000 in additional costs before the completion of the administration process. *See*

14 Cudworth Suppl. Decl.¶ 8. The Court finds the approximation of the additional expenses

15 reasonable and expects that the total costs will not exceed $104,171.40. Accordingly, the Court

16 approves the award of administrator costs in this amount.

17

18 **IV.   ORDER**

19       For the reasons discussed above,

20       (1)    Lead Plaintiff's Motion for Final Approval of Class Action Settlement is

21                 GRANTED; and

22       (2)    Lead Plaintiff's Motion for an Award of Attorneys' Fees and Payment of Expenses

23                 is GRANTED.  Lead Plaintiff is awarded attorneys' fees in the amount of

24                 $312,500.00, costs and expenses in the amount of $21,345.03, and a service award

25                 in the amount of $5,000.00

26       (3)    The Settlement Administrator costs are APPROVED in an amount not to exceed

27                 $104,171.40.

28       Without affecting the finality of this Order and accompanying Judgment in any way, the

United States District Court
Northern District of California

Court retains jurisdiction over (1) implementation and enforcement of the Settlement Agreement until each and every act agreed to be performed by the parties pursuant to the Settlement Agreement has been performed; (2) any other actions necessary to conclude the Settlement and to administer, effectuate, interpret, and monitor compliance with the provisions of the Settlement Agreement; and (3) all parties to this action and Settlement class members for the purpose of implementing and enforcing the Settlement Agreement.  Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the parties shall file a Post-Distribution Accounting in accordance with this District's Procedural Guidance for Class Action Settlements. The parties must seek approval from the Court for any *Cy Pres* distributions.

**IT IS SO ORDERED.**

Dated: April 19, 2021

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California